IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| In re: ) | Chapter 11 | |
| ) | | |
| CALVARY BAPTIST TEMPLE, INC. ) | Case No.: 10-40754 | |
| ) | | |
| Church. ) | | |
| ------------------------------------------------------ ) | | |
| RELIANCE TRUST COMPANY, ) | | |
| ) | | |
| Movant, ) | | |
| ) | | |
| v. ) | **CONTESTED MATTER** | |
| ) | | |
| CALVARY BAPTIST TEMPLE, INC. ) | | |
| ) | | |
| Respondent. ) | | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**COMES NOW** Reliance Trust Company ("Reliance"), as Trustee for the Series 2007-I Bonds of Calvary Baptist Temple, Inc. (the "Church"), debtor and debtor-in-possession in the above-captioned action, and, pursuant to 11 U.S.C. § 362(d)(2), herewith moves this Court for an Order lifting the automatic stay arising out of the above-captioned action such that Reliance can exercise its contractual and state law rights and remedies with regard to certain of the Church's real and personal property, in which Reliance holds a first-priority security interest. In support of its Motion, Reliance respectfully shows this Court as follows:

### I. THE PARTIES

1.

Reliance is a Georgia trust company that maintains its principal place of business at 1100 Abernathy Road, 500 Northpark Building, Suite 400, Atlanta, Georgia 30328.

WCSR 4357808v3

2.

The Church is a Georgia not-for-profit corporation with its principal place of business at 4625 Waters Avenue, Savannah, Georgia 31404.

## II. THE BANKRUPTCY CASE

3.

On April 6, 2010, the Church filed its Petition for relief under Chapter 11 in the above-captioned action.

4.

As of the date of this Motion, the Church continues to operate and manage its business affairs in the ordinary course as a debtor-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

5.

This Court has jurisdiction to hear and rule upon this Motion pursuant to 28 U.S.C. § 1334, and venue is proper pursuant to 28 U.S.C. §1409.

6.

This Motion is a core proceeding, as defined by 28 U.S.C. § 157.

## III. STATEMENT OF FACTS

**A. The Underlying Bond Indebtedness from the Church to Reliance, As Trustee**

7.

On or about November 1, 2007, the Church and Reliance entered into a "Trust Indenture" under which Reliance would serve as Indenture Trustee for the Series 2007-I First Mortgage Bonds (the "Bonds") to be issued by the Church.

8.

The Series 2007-I bond issue contained Bonds with a face amount of $7,000,000.00.

9.

A portion of the Bonds, with an aggregate face amount of $4,000,000.00, mature and are payable in full on October 20, 2011, and bear interest at the rate of 7.25% per annum. The remainder of the Bonds, with a face amount of $3,000,000.00, mature and are payable in full on October 20, 2012, and bear an interest rate of 8.0% per annum.

10.

The Church purchased the Bonds, and the Church remains the title owner of the Bonds.

**B.  The Collateral Property That Secures Repayment of the Bonds**

11.

In order to secure repayment of the Bonds, the Trust Indenture conveys to Reliance, as Trustee for the Bonds, a first-priority security interest in and to certain property of the Church consisting of 213.92 acres, more or less, located on Veterans Parkway, Savannah, Chatham County, Georgia (the "Property").

12.

In order to further evidence the Church's grant of a security interest in the Property to Reliance, on November 30, 2007, the Church executed that certain "Deed to Secure Debt, Assignment of Rents and Security Agreement" (the "Security Deed"), wherein it conveyed to Reliance, as Trustee, all of its right, title and interest in and to the Property.

13.

In order to perfect its security interest in the Property, on November 2, 2007, Reliance recorded (i) the Trust Indenture in the real property records maintained by the Clerk of the

Superior Court of Chatham County, Georgia, at Deed Book 333, Page 522; and (ii) the Security Deed in the real property records for Chatham County at Deed Book 334, Page 543.

### C. The Subsequent Loan Transaction with Church Mortgage Acceptance

14.

On November 30, 2007 the Church executed a Promissory Note (the "CMAC Note") in favor of Church Mortgage Acceptance Co., LLC ("CMAC") in the face amount of $7,000,000.00.

15.

Under the transaction with CMAC, CMAC advanced $7,000,000 in cash to the Church, which the Church used to fund the purchase of the Bonds. The Church used proceeds from the sale of the Bonds to pay a portion of the purchase price for the Property.

16.

In order to secure repayment of the CMAC Note, the Church executed that certain Loan, Pledge and Security Agreement (the "Pledge Agreement"), wherein it conveyed to CMAC a first-priority security interest in the Bonds, and further assigned to CMAC all of the rights and privileges of the Church, as the holder of the Bonds (the "Bondholder"), to secure the payment of the CMAC Note.

17.

Under the Pledge Agreement, CMAC is entitled to receive all payments of principal and interest that the Church makes under the Trust Indenture, including, but not limited to, the quarterly payments of interest due to the Bondholders.

18.

By an Allonge dated November 30, 2007, and an Assignment of Loan, Pledge and Security Agreement, Control Agreement and Other Loan Documents dated as of November 19, 2009 CMAC assigned the CMAC Note and the Pledge Agreement to CN CMAC LLC.  By an Allonge dated November 30, 2007, and an Assignment of Loan, Pledge and Security Agreement, Control Agreement and Other Loan Documents dated November 19, 2009, CN CMAC LLC assigned the CMAC Note and the Pledge Agreement to CMAC Funding I LLC ("Funding"). Funding became, and remains, the payee under the CMAC Note, and the entity that holds i) the first-priority security interest in the Bonds, and ii) the rights and privileges of the Bondholder.

**D.  The Church's Payment Obligations Under the Trust Indenture**

19.

Under the terms of the Trust Indenture, the Church is currently obligated to remit to Reliance a monthly payment in the amount of $44,454.39 (the "Sinking Fund Payment"), which is deposited into a sinking fund that Reliance maintains as Trustee for the Bondholder.

20.

Beginning on October 20, 2011, after the maturity and payment in full of the first $4,000,000.00 of the Bonds, the monthly Sinking Fund Payment obligation will drop to $20,287.73.

21.

Under the terms of the Trust Indenture, on each of January 20, April 20, July 20 and October 20 of each year Reliance, as Trustee, is to make a distribution to the Bondholder, in this case Funding, of the interest due in the amount of $132,500.00.

### E. The Church's Default On its Payment Obligations Under the Trust Indenture

22.

The Church has not made a regular Sinking Fund Payment to Reliance since September, 2009. As a consequence, the Church is in arrears to Reliance under the terms of the Trust Indenture in the amount of $350,685.52 as of May 4, 2010.

23.

Using the Sinking Fund Payments made by the Debtor in July, August and September, 2009, Reliance paid to Funding the interest payment due on October 20, 2009. The Church failed to provide Reliance with adequate funds to make the distributions of interest to Funding that were due to be made on January 20, 2010 and April 20, 2010.

24.

As a result of the Church's failure to provide Reliance with adequate funds to make the January 20, 2010 and April 20, 2010 distributions of accrued interest to Funding as of May 4, 2010, the Church is in arrears on its interest obligations to Funding in the amount of $285,611.11.

### F. The Value of the Collateral Property

25.

On January 26, 2010, Columbus Nova – Commercial Mortgage Servicing, LLC, an affiliate of Funding, commissioned CB Richard Ellis ("CBRE") to appraise the fair market value of the Property.

26.

On February 17, 2010 CBRE issued a report indicating that as of February 15, 2010 the Property has a fair market value of $5,500,000.00.

### G. The Church's Current Financial Circumstances

27.

In March, 2010, the most recent month for which the Church has reported income, the Church's total income from tithes, offerings and other sources was $164,410.81. During the same month the Church expended $175,714.99 on operating expenses and debt service. As a consequence, the Church operated at a deficit of $11,304.18, and had absolutely no excess income during March, 2010 that it could commit to making the Sinking Fund Payments due on the Bonds.

28.

The Church's performance for the first nine months of its current budget year was not any better. During the first three quarters of the current budget year, the Church's total income from tithes, offerings and other sources was $1,706.763.89. During the same period the Church expended $1,740,277.21 on operating expenses and debt service. As a consequence, the Church is operating at a year to date budget deficit of $33,513.32, and has absolutely no excess income during the first three quarters to making the Sinking Fund Payments due on the Bonds.

29.

Suntrust Banks holds a first-priority lien against the Church's main campus on Waters Avenue in order to secure a debt obligation in the face amount that equals or exceeds $2,800,000.00 (the "Suntrust Primary Obligation").

WCSR 4357808v3

30.

The Church's schedules and Statement of Financial Affairs indicate that the Church makes monthly mortgage payments to service the Suntrust Primary Obligation that appear to have varied from $6533.33 to $8956.16 during the first four months of 2010.

31.

In addition to the Suntrust Primary Obligation, the income from the Church's School is committed to the repayment of revenue bonds that have a face amount of more than $6,000,000.00 (the "School Bonds").

32.

The Church makes monthly payments in order to service the debt evidenced by the School Bonds. These payments appear to have varied from $17,766.02 to $19,660.31 during the first four months of 2010.

33.

The School Bonds are guaranteed by an Irrevocable Letter of Credit from Suntrust. It appears that the Church has paid Suntrust a fee of $7488.00 to support this Irrevocable Letter of Credit, although the Church's Statement of Financial Affairs is not completely clear on this point.

**H.  The Church's Articulated Plans for the Property**

34.

The Property is raw, heavily wooded, undeveloped land. The Church derives absolutely no income from the Property.

35.

The Property imposes a financial burden on the Church to, at a minimum, pay premiums for liability insurance sufficient to protect the Church from claims arising out of an accident or other event on the Property.

36.

Despite the fact that the Church does not have income sufficient to service the Bonds, the Church has articulated a plan to develop a senior assisted living facility on the Property. The cost of the assisted living facility is estimated to be $19,000,000.00. See, Transcript, 341 First Meeting of Creditors.

37.

The Church has not identified a source of funding that is committed to lending the Church the $19,000,000 necessary to move forward with the development of the senior assisted living facility. Further, the Church has not given any indication of how it could obtain such a loan without providing a new lender with a security interest in the Property that is senior to Reliance's existing security interest.

## IV.  ARGUMENT AND CITATION OF AUTHORITY

### A.  The Debtor has No Equity in the Property

Reliance holds a security interest in the Property. The Church currently owes Reliance, as Trustee, more than $7,350,685.52 under the terms of the Trust Indenture. The Property has an appraised fair market value of no more than $5,500,000.00. This appraised value may well be generous in light of the lack of any available commercial financing in the marketplace that would

enable a third party to acquire the Property or commence development of the Property. Thus, there is absolutely no equity in the Property for the benefit of the Debtor or the Debtor's estate.

### B. The Debtor Is Unable to Propose a Truly Feasible Plan of Reorganization

Once a creditor such as Reliance establishes that there is no equity in property that serves as collateral for a loan obligation, the debtor has the burden to prove that the collateral property is necessary for the debtor's effective reorganization. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1313 (5th Cir. 1985). The debtor must demonstrate that the property is not only indispensable for a plan of reorganization, but must also show that the property is necessary for the confirmation and completion of a realistic and plausible plan of reorganization. U.S. Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375 (1988).

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts . . . have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

Timbers, 484 U.S. at 375-76, 108 S. Ct. at 626. The debtor must have a realistic possibility that it can successfully reorganize, and the mere fact that the property would be indispensable to an unrealistic or financially impossible plan of reorganization is not sufficient to defeat a motion for relief from the automatic stay. In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984); In re Gunnison Center Apartments, L.P., 320 B.R. 391 (Bankr. D. Colo. 2005); In re Diversified Energy Venture, 311 B.R. 712 (Bankr. W.D. Pa. 2004).

In the instant case, the Church simply cannot propose and confirm a feasible plan of reorganization that would comply with the requirements of 11 U.S.C. 1129(b)(2)(A)(II).

> "[A] reasonable probability cannot be grounded solely on speculation ... and a 'mere financial pipe dream' is insufficient to meet the requirements of § 362(d)(2)." *In re 6200 Ridge, Inc.*, 69 B.R. at 843 (citations omitted); see, *In re Anderson Oaks*, 77 B.R. at 110 ("The court should not, at the conclusion of the debtor's case, be left to speculate about important elements and issues relating to the likelihood of an effective reorganization."): see also, *In re Ashgrove Apartments of DeKalb County, Ltd.*, 121 B.R. 752, 756 (Bankr.S.D.Ohio 1990).

In re Global Ship Systems, LLC, 391 B.R. 193 (Bankr.S.D.Ga. 2007).  Further,

> A chapter 11 plan cannot be based upon a visionary scheme. See § 1129(a)(11); *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir.1985). The Debtor's "plan" for opposing this motion for relief from stay is fraught with speculation and uncertainty regarding implementation and feasibility, and it further appears to be unconfirmable as a matter of law. The court cannot find that an "effective reorganization" is in prospect.

In re A Partners, LLC, 344 B.R. 114 (Bkrtcy.E.D.Cal.,2006) (Motion for relief granted where debtor had no equity in collateral property, debtor's plan for realizing equity was based upon successfully completing a speculative sale of the collateral property, and debtor had no funds to make ongoing payments to the senior lien holder).

The Church is obligated under the terms of the Trust Indenture to pay to Reliance $44,454.39 each month to service the Bond debt obligations.  The Church has not made a Sinking Fund payment to Reliance since September, 2009.  As a consequence, the Church is now in arrears on its payments due under the Trust Indenture in the amount of $350,685.52.  It is clear from the Church's own monthly operating statements that it does not have sufficient revenue from all sources to even begin to service the Bond debt obligation, let alone confirm a plan of reorganization that would meet the fair and equitable debt service requirements imposed by 11 U.S.C. §1129(b)(2)(A)(II).  Under these circumstances, the Church's suggestion that it is going to be able to fund the

development of the Property by securing a new, $19,000,000.00 loan is nothing more than "…a mere financial pipe dream." In re Global Ship Systems, LLC, 391 B.R. at 208.

### C. The Property is Not Necessary for the Debtor's Reorganization

In addition to the requirement that the debtor must have a realistic possibility of confirming a plan, the property in question must be truly necessary for the debtor's reorganization. Where the debtor holds unimproved land that is not related to, or used in, the debtor's primary business enterprise, then the property in question in not necessary for the debtor's reorganization. In re N-Ren Corp., 65 B.R. 661 (Bankr. S.D.Ohio,1986) (2287 acres of raw land owned by fertilizer manufacturer, which mined no raw materials from the land and did not maintain operations on the property, held not necessary for effective reorganization). If the debtor's collateral property is not producing income, and does not hold substantial resources that can provide the debtor with income in the future, that property is not necessary for the debtor's reorganization within the meaning of 11 U.S.C. 362(d)(2). In re Diversified Energy Venture, 311 B.R. at 720; In re Pegasus Agency, Inc., 186 B.R. 597 (Bankr. S.D.N.Y.,1995) (relief from stay appropriate where debtor was not generating income from collateral property, and had no resources to zone, subdivide and develop the property into lots that could be sold to generate income to fund a plan); In re Monica Road Associates, 147 B.R. 385 (Bankr. E.D.Va. 1992); In re Park West Hotel Corp., 64 B.R. 1013 (Bankr.D.Mass.,1986) (relief from stay appropriate where collateral property, an unfinished motel, was not open to the public and was not generating any income).

In this case the Property, which secures repayment of the Bonds, is not by any stretch of the imagination necessary for the Church's effective reorganization. The Property is raw, ungraded, undeveloped land that is currently composed of forest and wetlands. The Church is

not in the business of developing real estate. The Church does not conduct any of its primary business activities on the Property, and it does not derive any economic benefit whatsoever from the Property. In fact, in its current state the Property is nothing more than an economic drag on the Church's finances, as ownership on the Property imposes upon the Church the obligation to provide liability insurance against any mishap that might occur on the Property. Instead of being necessary for the Church's reorganization, a scenario that would enable the Church to give up the Property would enhance the prospects for a successful reorganization of the Church's financial structure and the preservation of its existing campus on Waters Avenue.

## V. **CONCLUSION**

It is beyond dispute that there is no equity in the Property for the benefit of the Church or its estate. Further, the Property is raw, undeveloped land that generates no income that the Church could use to fund a plan of reorganization. Even if the Property provided income to the Church, the Church's financial circumstances are such that the Church simply cannot, under any realistic set of occurrences, propose, confirm and fund a plan of reorganization that is "fair and equitable", as required by 11 U.S.C. §1129(b)(2)(A)(II). As a consequence, Reliance, as Trustee for the Bonds, has firmly met its prima facie case that it is entitled to relief from the automatic stay such that it can exercise its contractual and state law rights and remedies against the Property.

Respectfully submitted this 27th day of May, 2010.

[signatures on following page]

- 14 -

                                                                                           WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

                                                                                           By:  /S/  John A. Thomson, Jr.

271 17th Street, N.W.                            John A. Thomson, Jr.
Suite 2400                                               State Bar No. 706760
Atlanta, GA  30363-1017
(404) 888-7409 direct phone          **Attorney for Reliance Trust Company, as**
(404) 870-4841 direct fax               **Trustee for the Series 2007-I Bonds of**
jthomson@wcsr.com                        **Calvary Baptist Temple, Inc.**


                                                                     BRENNAN AND WASDEN, LLP

                                                                 By: /s/  William E. Dillard
                                                                     WILEY A. WASDEN, III
                                                                     Georgia Bar No. 738750
                                                                     WILLIAM E. DILLARD
                                                                     Georgia Bar No. 222030

                                                          **Attorney for Reliance Trust Company, as**
                                                          **Trustee for the Series 2007-I Bonds of**
                                                          **Calvary Baptist Temple, Inc**

P.O. Box 8047
Savannah, Georgia  31412
(912) 232-6700
wwasden@brennanandwasden.com
bdillard@brennanandwasden.com

- 14 -

WCSR  4357808v3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 27, 2010, a true and correct copy of the within and foregoing **MOTION FOR ADEQUATE PROTECTION** was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| C. James McCallar, Jr., Esq. | Matthew E. Mills, Esq. |
| ATTORNEY FOR DEBTOR | Assistant United States Trustee |
| McCallar Law Firm | Office of the United States Trustee |
| P.O. Box 9026 | 222 West Oglethorpe Avenue |
| Savannah, GA  31412 | Suite 302 |
| | Savannah, GA  31401 |

The undersigned further certifies that a true and correct copy of the **MOTION FOR ADEQUATE PROTECTION** has been served upon the Church by placing same in the United States postal service with proper postage affixed thereto and addressed as follows:

Calvary Baptist Temple
4625 Waters Avenue
Savannah, GA  31404


This 27th day of May, 2010.

                                                    /S/  John A. Thomson, Jr.
                                                      John A. Thomson, Jr.
                                                      State Bar No. 706760

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
271 17th Street, N.W.
Suite 2400
Atlanta, GA  30363-1017
(404) 888-7409 direct phone
(404) 870-4841 direct fax
jthomson@wcsr.com

WCSR  4357808v3