### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **CALVARY BAPTIST TEMPLE** | § | **Case No. 10-40754-JSD** |
| | § | |
| Debtor | § | |

### DEBTOR'S CHAPTER 11 PLAN
### PROPOSED FEBRUARY 16, 2011

**COMES NOW**, Calvary Baptist Temple, Debtor in the above captioned case, and proposes the following Plan in its Chapter 11 case pending before the United States Bankruptcy Court for the Southern District of Georgia. The Debtor is and has been the Debtor-in-Possession ("DIP") in this case since its filing on April 6, 2010.  Debtor runs a church, daycare and a day school in addition to owning real estate  in Chatham County, Georgia.  Debtor is proposing this plan in a good faith effort to satisfy its obligations to creditors and asserts that this plan is feasible and is in the best interest of all creditors and  the Debtor.

### DEFINITIONS

1. "**DEBTOR"** shall mean Calvary Baptist Temple.

2. "**CREDITORS**" shall mean all entities holding allowed claims against the Debtor for debts of any character whatsoever.

3. "**ENTITIES**" shall include person, estate, trust, governmental unit, and United States Trustee.

4. "**EQUITY SECURITY HOLDER**" shall mean holder of an equity interest or security (or share of stock) in a corporate entity or LLC.

5. "**PLAN**" shall mean this Chapter 11 Plan.

1

6.      "**COURT**" shall mean the United States Bankruptcy Court for the Southern District of Georgia.

7.      "**EFFECTIVE DATE**" shall be that date on which the order confirming the Plan becomes final and non-appealable.

8.      "**NET PROCEEDS**" shall mean gross sales price less county property taxes, closing attorney fees attributable to Seller, payments to secured creditors/lienholders, recording charges, transfer tax, and sales commission, if any.

9.      "**CLAIM**" shall mean each claim based upon a duly and timely filed proof of claim or upon a duly scheduled claim where no claim is filed, which is either (a) an undisputed, or (b) a disputed claim which is finally allowed and ultimately fixed in amount by an Order of the Court or by settlement agreement approved by or entered in this Court, which Order or settlement agreement is no longer subject to further rehearing, review or appeal or reconsideration pursuant to Statute, Bankruptcy Rules, or as a matter of right.

10.     "**CODE**" refers to the United States Bankruptcy Code, being the Bankruptcy Reform Act of 1978, Title 11 U.S.C. §101, et. seq., as the same has and may be amended.

11.     "**CONFIRMATION DATE**" shall refer to the date on which the U.S. Bankruptcy Court enters an order confirming this plan, as it may be amended or modified.

12.     "**SERIES 2007-I BONDHOLDER**" shall mean Reliance Trust Company ("Reliance"), in its capacity as the Indenture Trustee for the Series 2007-I First Mortgage Bonds issued by the Church; Church Mortgage Acceptance Co., LLC; Columbus Nova Commercial Real Estate Acquisition Group LLC; Columbus Nova Commercial Mortgage Servicing LLC, and CMAC Funding I LLC ("CMAC Funding", and Church Mortgage Acceptance Co., LLC;

Columbus Nova Commercial Real Estate Acquisition Group LLC; Columbus Nova Commercial Mortgage Servicing LLC, and CMAC Funding sometimes hereinafter collectively referred to as the "CMAC Parties").

13.  **"SERIES 2007 - II BONDHOLDERS"** shall mean all persons or entities who purchased Series 2007-II bonds under a second mortgage bonded indebtedness issued October 20, 2007,  by Calvary Baptist Temple.

## ARTICLE I

## <u>CLASSIFICATION OF CLAIMS</u>

**UNCLASSIFIED CLAIMS**

Costs and expenses of administration including allowed claims as specified under §507(a)(2) through (8) of the Bankruptcy Code and including any outstanding installments of the quarterly fee levied by the United States Trustee.

**CLASSIFIED CLAIMS**

CLASS 1. Allowed  tax claims of governmental units entitled to priority under §507(a)(8) of the Bankruptcy Code

CLASS 2.  Allowed secured claims of Series 2007-I Bondholder.

CLASS 3.  Allowed secured claim of Series 2007 - II Bondholders

CLASS 4.  Allowed secured claim of SunTrust Bank.

CLASS 5.  All other unsecured claims.

## ARTICLE II

## <u>PROVISIONS FOR SATISFACTION OF CLAIMS</u>

**UNCLASSIFIED CLAIMS**

1. The §507(a)(2) fees and expenses of McCallar Law Firm for representing Debtor in this case are to be paid when allowed by the Bankruptcy Court from cash on hand held by Debtor or as may be remaining on retainer or as agreed by the Debtor and McCallar Law Firm.

2. All other §507(a)(2) administrative expenses, including the U.S. Trustee's quarterly fees, shall be paid current no later than the effective date of the Plan, except as otherwise agreed upon by the administrative expense claimant.  Upon confirmation, the Debtor will continue to pay quarterly U.S. Trustee fees until the case is closed, converted, or dismissed.  28 UCS §1930(a)(6).

3. All remaining §507 unclassified claims, to include §507(a)(8), will receive on account of such claim regular payments of a total value, as of the effective date of the plan, equal to the allowed amount of such claim, over a period ending not later than five (5) years from the date of the order for relief; i.e., April 6, 2015, to include interest at a rate of 6% or the prevailing interest rate as established and utilized by the governmental entity involved, which ever is less.

**CLASSIFIED CLAIMS**

<u>Class 1 - Real Property Tax Claims</u>

Real property tax claims shall be paid in full as and when due.  In the event the Debtor sells real property which is subject to a lien for county taxes, the taxes will be paid at closing.  In the event of a foreclosure or transfer of property to a third party otherwise, the lien will remain on the property until satisfied by the transferee.  The Debtor is tax exempt and has no property tax liability.


**General Provisions Applicable to this Plan and the Obligations of Debtor and Creditors  in This Case**.

The terms and conditions in the Settlement Agreement and Release attached hereto as a part

of Exhibit C are incorporated and made a part hereof by express reference and attachment and all parties to that Agreement are bound as a matter of law. All other creditors bound upon confirmation of the Plan proposed by Debtor in this Chapter 11 case take notice of this said Settlement Agreement and Release and, take notice that their rights may be affected by the action of other parties to the Agreement or by the Debtor's default in the performance of any of its obligations under said Agreement.

In summary, the said Agreement which has been approved by the Court provides as follows: All of the real property collateral held by the Debtor and pledged to the Class 2 and Class 3 creditors, approximately 214.2 acres in Chatham County, Georgia, is being deeded or released to the Class 2 creditor except for approximately 16 acres, (the Development Parcel), and the Debtor is transferring or releasing any interest which it holds in the Series 2007-I bonds to CMAC Funding I, LLC, in exchange for a release from all liability to this Class 2 creditor; provided, however, this Class 2 creditor shall continue to hold a security interest in the Development Parcel in the amount of $500,000 plus accruing interest at 10% per annum until the Development Parcel is conveyed to a newly created "for profit" entity (Development Entity) in which this Class 2 creditor will initially own a 15% interest which interest shall be a voting, preferred interest. At the time of conveyance of the Development Parcel to said Development Entity and the issuance of the 15% preferred interest to this Class 2 creditor, an 85% interest in common shares will be issued pro rata, based upon the principal amount of the bond(s) held by the individual Series 2007-II bond holder, and the security interest held by this Class 2 creditor(s) and the Series 2007 - II Bondholders to the Development Parcel shall be released. If necessary the Bankruptcy Court will be authorized to order the cancellation of record of the security interest of the bondholders upon motion of the Debtor.

5

The interest of the Series 2007 - II Bondholders will be in the form of voting, common shares that cumulatively total 85% of the outstanding shares of the Development Entity. The preferred return on the Class 2 shares will be equal to the remaining balance of the original $500,000 plus interest accruing at 10% per annum from the Effective Date and this payment shall constitute a priority distribution of the first distributable income from the operation, ownership, sale or refinance of the Development Project

At the time of the issuance of the shares in the Development Entity, all claims of the Series 2007 - I Bondholder and the Series 2007- II Bondholders against the Debtor shall be fully discharged in whole.

The Development Entity will be required to take all steps as necessary after the Effective Date to have the water and sewer extension delivered to the 214 acres in accordance with the Water and Sewer Agreement currently in existence between the Debtor and the City of Savannah with completion of construction of the water and sewer extension within 30 months from the effective date.

The balance owing on the indebtedness to the Class 2 creditor will be paid by the Development Entity within 30 months from the Effective Date at which time the Class 2 creditor or its designee will release all of its interest in the Development Entity or retain its 15% preferred interest in the Development Entity in lieu of any required repayment.

Should the Development Entity fail to complete these requirements within 30 months from the Effective Date, then the Development Entity shall convert the shares of the Class 2 creditor to an 85% preferred interest in the Development Entity and convert the cumulative shares held by the Series 2007 - II Bondholders from 85% common interest to 15% common interest in the

6

Development Entity without the necessary for execution of conversion documents or other consents from the Series 2007 - II Bondholders.

**Effect of Failure to Timely Consummate the Terms and Obligations Set forth In This Agreement**.  Should the Debtor (i) fail to meet any of the deadlines imposed under Paragraphs 1, 3, 4, 5, 7, 8, 9, 10 and 11 in the Settlement Agreement and Release, time being of the essence to the performance by the Debtor of such obligations; or (ii) contest the Bond Relief Motion; or (iii) should the Plan not contain the provisions required by Paragraph 11 of said Agreement; or (iv) should the Debtor not prosecute confirmation of the Plan, and obtain an order confirming a Plan that contains, at a minimum, the provisions set forth in Paragraph 11 of the Agreement within ninety (90) days from the approval of the Disclosure Statement, then, in any of these events, the Series 2007 - I Bondholder shall have relief from the automatic stay as to the Development Parcel, without the need for further hearing before the Court, and the Debtor herewith releases, waives and forever quitclaims any objections that it may have to the issuance of relief from the stay with regard to the Development Parcel, other than objections that go to the substance of whether the Debtor has in fact defaulted on these provisions.  In such case, upon receipt by the Series 007 - I Bondholder or its Designee of title to the Development Parcel through a separate and duly conducted foreclosure sale that shall require no further hearing from the Court, and shall follow, and be in addition to, the foreclosure sale of the 198 Acres contemplated in Paragraph 1 of the Agreement, no party will have further recourse against the Debtor.

   Class 2 - Allowed secured claim of Series 2007 - I Bondholder

The allowed claim of the  Series 2007 - I Bondholder shall be satisfied pursuant to the terms of the Settlement Agreement and Release (Agreement) which was approved by the United States

Bankruptcy Court for the Southern District of Georgia , by Consent Order entered on January 18, 2011, said Agreement being attached hereto and made a part hereof by express reference and attachment as Exhibit C and the above General Provisions.

Class 3 - Allowed secured claim of Series 2007-II Bondholders.

The allowed claims of Series 2007-II Bondholders  shall be satisfied pursuant to the terms of the Settlement Agreement and Release (Agreement) which was approved by the United States Bankruptcy Court for the Southern District of Georgia , by Consent Order entered on January 18, 2011, said Agreement being attached hereto and made a part hereof by express reference and attachment as Exhibit C and the above General Provisions.

Class 4 - Allowed secured claim of SunTrust Bank.

The debt to SunTrust Bank  shall satisfied by a consolidation of all notes and amortized over 30 years with a 15 year balloon at an interest rate of  LIBOR (London Interbank Offering Rate) + 1 in accordance with the following:

The allowed Claim # 19  of SunTrust Bank in the principal amount of $3,558,737.94  shall be satisfied in full by payment of 180 consecutive,  monthly payments of principal to this creditor in the amount of $9,885.38  plus per diem interest on the outstanding principal balance owing on the date of the payment of the installment commencing 30 days from the effective date with a balloon payment due on the 180th month following the effective date.  This constitutes principal together with interest at LIBOR (London Interbank Offering Rate) + 1.   The collateral consists of a first lien on the real property of Debtor on Waters Avenue, Savannah, Chatham County, Georgia which lien shall remain until paid in full.

In addition to the matured promissory notes due to SunTrust Bank, the Debtor has continuing

obligations and contingent liabilities to SunTrust Bank pursuant to (a) that certain Letter of Credit Agreement dated November 1, 2006 and that certain Irrevocable Letter of Credit No F849190 issued in favor of U.S. Bank National Association, as Trustee, and (b) that certain ISDA Master Swap Agreement and Schedule dated April 13, 2006 and April 18, 2006 executed by the Debtor in favor of SunTrust Bank in the principal amount of $6,100,000 as of the filing date.  Any and all liabilities of the Debtor under the foregoing agreements shall be paid to SunTrust Bank in a timely manner when due under the foregoing agreements and such obligations shall continue to be secured by all existing collateral pursuant to the terms of the existing loan documents. Amounts due on the Swap Agreement should it be terminated will be added to the principal due and amortized with the primary debt.

Debtor shall maintain insurance on the property adequate to cover the full value of the improvements with this creditor shown as loss payee.  Debtor shall be responsible for the payment of any pre-petition taxes in accordance with the Chapter 11 plan and will pay any post-petition taxes when and as due.

In the event of default of the payment terms under this Plan, including the obligation to satisfy real property taxes and for insurance as and when they are due post-petition or as provided otherwise in this Plan, this creditor can proceed to enforce its right to foreclosure under state law following 30 day written notice with an opportunity during the 30 day period to cure.

Notices shall be sent in writing, certified mail, return receipt requested and addressed to:

Calvary Baptist Temple                    Calvary Baptist Temple
c/o C. James McCallar, Jr.                c/o Fred Cooper CFO
McCallar Law Firm                         4625 Waters Avenue
Post Office Box 9026                      Savannah, GA 31404
Savannah, GA  31412                       fcooper@calvaryinsavannah.org
mccallar@mccallarlawfirm.com

9

 Class 5 - All other general unsecured claims.

The general unsecured claims shall be paid in full on or before 12 months from the effective date with no interest or carrying charges.

**Address of Notices**

Notices which creditors are required to give to the Debtor's attorney shall be given by first class mail, addressed as follows:

Calvary Baptist Temple                    Calvary Baptist Temple
c/o C. James McCallar, Jr.                c/o Fred Cooper CFO
McCallar Law Firm                         4625 Waters Avenue
Post Office Box 9026                       Savannah, GA 31404
Savannah, GA  31412                        fcooper@calvaryinsavannah.org
mccallar@mccallarlawfirm.com

**ARTICLE III**

**PROVISION FOR ACCEPTANCE OR REJECTION
OF EXECUTORY CONTRACTS**

Except to the extent otherwise provided herein, all leases with Debtor are current and  are hereby assumed.

**ARTICLE IV**

**RETENTION OF JURISDICTION**

The Court shall retain jurisdiction of this Chapter 11 case to fix allowances of compensation and other administrative expenses, to hear objections to claims, to hear and to determine all claims against the Debtor, to hear motions or adversary proceedings that may be pending or filed against the Debtor seeking compliance with this Plan as confirmed.

10

**ARTICLE V**

**SPECIAL PROVISIONS AND MEANS
 FOR EXECUTION OF THE PLAN**

1.  The funds necessary for the satisfaction of all claims shall come primarily from the liquidation of real and personal property.

2.      **All claims which were originally scheduled by Debtor as disputed, contingent or unliquidated, and for which no proof of claim was timely filed will be deemed disallowed pursuant to Bankruptcy Rule 3003(c)(2) unless an order has been entered by the Court to the contrary. Holders of these claims which are not allowed claims shall receive nothing under this Plan.** No creditor shall have the right to institute a legal action or to seek a judgment against Debtor where those rights were not in existence  on the date of the order for relief, April 6, 2010.

3.  Debtor shall pursue all liquidated and unliquidated claims owing to Debtor.

4.  By the 20th day of each month Debtor shall file with the U.S. Trustee a monthly income and expense report for the preceding month until the case is closed or until otherwise relieved of this responsibility by the Court.

5.  During the pendency of these proceedings, Debtor will electronically transmit any and all monies withheld and deducted from any pay entitlement of any employee or other person by way of any law of the United States or of any of the several States as and when the funds are withheld.

6.  In accordance with the Internal Revenue Code and Treasury Regulations, the Debtor shall deposit in a Federal Reserve Bank or other authorized depository the aggregate of the employer's share of social security taxes plus all other withholdings, social security and excise taxes so deducted, withheld, collected, or otherwise due by the debtor, and, within three banking days after each such deposit, the debtors shall mail notification to the District Director of Internal Revenue of

11

the date and place of said deposit and the amount of money deposited with respect to each item of federal tax, upon the form furnished by the District Director.

7.  McCallar Law Firm shall continue to be attorneys for the Debtor through the confirmation date and thereafter and shall be entitled to compensation from funds of the Debtor up to confirmation when and as approved by the Court.

8.  The Debtor is  specifically authorized to negotiate and consummate sales of any property in which it has an interest without order of this Court.

## ARTICLE VI

## MODIFICATION OF THE PLAN

The Debtor may propose amendments or modifications to this Plan any time prior to confirmation of the Plan and the Plan as modified shall become the Plan.  After confirmation, said proponent may modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code.

## ARTICLE VII

## CLAIMS NOT IMPAIRED

None.

## ARTICLE VIII

## MISCELLANEOUS

An Exhibit "A" is attached that consists of a list of assets verses the liabilities of the Debtor. Exhibit "B" is a spreadsheet that lists all the creditors in each class and the amount  in the column designated "Plan Amount" is the allowed amount of the claim.  The exhibits are incorporated herein and made a part hereof by express reference.

Debtor reserves the right to object to claims either before or after confirmation. The debtor

12

shall have ninety (90) days following confirmation to file any and all objections to claims.

Upon satisfaction of Debtors' obligations under this Plan, any remaining property shall be retained by the Debtor. If the plan is confirmed and this case is subsequently converted to a case under Chapter 7 of the Bankruptcy Code, then all of the property of the pre-confirmation Chapter 11 bankruptcy estate shall become property of the Chapter 7 bankruptcy estate.

This 16th day of February, 2011.

Respectfully submitted,

MCCALLAR LAW FIRM

By: /s/ C. James McCallar, Jr.
C. James McCallar, Jr.
Georgia Bar Number 481400
Tiffany E. Caron
Georgia Bar Number 745089
Attorneys for Debtor

McCallar Law Firm
Post Office Box 9026
Savannah, GA 31412
Tel:    (912) 234-1215
Fax:    (912) 236-7549

13

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 11** |
| **CALVARY BAPTIST TEMPLE** | § | **Case No. 10-40754-JSD** |
| | § | |
| **Debtor** | § | |

### CERTIFICATE OF SERVICE

I, C. James McCallar, Jr., do hereby certify that I have this date served the foregoing Debtor's Plan upon the following by depositing a copy of the same in the United States mail with proper postage affixed:

Matthew Mills
Assistant U.S. Trustee
222 West Oglethorpe Ave. Suite 302
Savannah, GA 31401
matthew.e.mills@usdoj.gov

Wiley A. Wasden III
William E. Dillard
Brennan & Wasden LLP
P.O. Box 8047
Savannah, Georgia 31412
 wwasden@brennanandwasden.com
 bdillard@brennanandwasden.com

John A. Thomson, Jr., Esq.
Womble Carlyle Sandridge & Rice, PLLC
271 17th Street, N.W.
Suite 2400
Atlanta, Georgia 30363-1017
jthomson@wcsr.com

David W. Cranshaw, Esq.
Morris, Manning & Martin, LLP
3343 Peachtree Road, NE, Ste 1600
Atlanta, Georgia 30326
dwc@mmmlaw.com

14

Mark Bulovic
Bulovic Law Firm, LLC
1020 Bryan Woods Loop, Ste 5
Savannah, GA   3141
bulovic@comcast.net

GE Money Bank
c/o Recovery Management Systems Corp.
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605
Attn: Ramesh Singh
claims@recoverycorp.com

Curtis L. Mack, Esq.
Thomas R. Walker, Esq.
McGuireWoods LLP
1170 Peachtree Street, N.E.
Suite 2100
Atlanta, Georgia 30309

This 16th day of February, 2011.

Respectfully submitted,

MCCALLAR LAW FIRM

By:___/s/ C. James McCallar, Jr.___
C. James McCallar, Jr.
Georgia Bar Number 481400
Tiffany E. Caron
Georgia Bar Number 745089
Attorneys for Debtor

McCallar Law Firm
Post Office Box 9026
Savannah, GA 31412
Tel:    (912) 234-1215
Fax:    (912) 236-7549

CALVARY BAPTIST TEMPLE- CASE NUMBER 10-40754-LWD- EXHIBIT "A"

| ASSETS: | ASSET VALUE EST. VALUE | SECURED CREDITORS Amount of claims | SECURED CREDITORS Names | |
|---|---|---|---|---|
| Real Property: | | | | |
| 22.8 Acres, Church Campus, 4625 Waters Ave., Savannah, G | $30,000,000.00 | | | |
| | | $6,100,000.00 | SunTrust Bank | Series I -2007 Bonds |
| | | $3,558,737.94 | SunTrust Bank | Series II 2007 Bondholders Ir |
| | | $758,737.94 | SunTrust Bank | Series II- 2007 BondAmount |
| 212.42 Acres- 2020 Chatham Parkway, Savannah, GA | $7,190,000.00 | | | |
| | | $7,589,045.50 | Columbus NOVA c/o Reliance | |
| | | $564,583.94 | Michael Funderburk, Trustee | |
| | | $3,019,500.00 | Series II Bondholders | |
| TOTAL REAL PROPERTY | $37,190,000.00 | | | |
| Personal Property: | Balances as of 4/6/10 | | | |
| PETTY CASH | $500.00 | | | |
| BANK ACCOUNTS | $644,481.55 | | | |
| STOCKS & INTEREST - Suntrust Bank | $1,114.87 | | | |
| STOCKS & INTEREST - Suntrust Bank- Earmarked Account | $35.41 | | | |
| STOCKS & INTEREST - Suntrust Bank- Endowment Account | $68,594.52 | | | |
| STOCKS & INTEREST - Suntrust Bank- Endowment Account | $451,511.44 | | | |
| STOCKS & INTEREST - Suntrust Bank- Endowment Account | $99,654.82 | | | |
| STOCKS & INTEREST - Wells Fargo- Endowment Account | $2,405.66 | | | |
| General Accounts Receivables- Daycare | $25,227.02 | | | |
| General Accounts Receivables- Tuition | $97,426.83 | | | |
| Judgment Against David W. Taylor | $11,655.78 | | | |
| Lawsuit Pending against Church Mortgage Acceptance Co., et | unknown | | | |
| Automobiles, Trucks, Trailers ect. | $78,030.00 | | | |
| Machinery, Fixtures, Equipment - Church and Daycare | $1,281,623.56 | | | |
| Machinery, Fixtures, Equipment - Day School | $3,069,272.98 | | | |
| TOTAL ASSETS | $43,021,534.44 | | | |
| CLAIMS - | | | | |
| ADMINISTRATIVE CLAIMS | $39,000.00 | | | |
| LEASES & EXECUTORY CONTRACTS | $0.00 | | | |
| PRIORITY CLAIMS - 507 (a)(8) | $25,815.60 | | | |
| SECURED CLAIMS - Reliance - Series I Bondholder | $7,589,045.50 | | | |
| SECURED CLAIMS- Series II Bondholders- Funder | $758,737.94 | | | |
| SECURED CLAIMS - Series II Bondholders | $3,036,132.50 | | | |
| SECURED CLAIM- SunTrust Bank | $6,100,000.00 | | | |
| SECURED CLAIM- SunTrust Bank | $3,558,737.94 | | | |
| SECURED CLAIM- SunTrust Bank | $758,737.94 | | | |
| GENERAL UNSECURED CLAIMS | $232,404.01 | | | |
| Total Claims | $22,098,611.43 | | | |

CALVARY BAPTIST TEMPLE - CASE NUMBER 10-40754-LWD - EXHIBIT "B"

| CLAIM STATUS | | TOTAL |
|---|---|---|
| Administrative Claims | estimated | $90,500.00 |
| Leases & Executory Contracts | | $0.00 |
| Priority Claims | | $25,815.60 |
| Secured Claims | | $21,590,605.32 |
| General Unsecured Claims | | $232,404.01 |
| GRAND TOTAL | | $21,939,324.93 |

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | page 2 PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | **ADMINSTRATIVE CLAIMS** | | | | | | |
| | McCallar Law Firm P.O. Box 9026 Savannah, GA 31412 | | | $39,000.00 estimated | | | $39,000.00 |
| | **TOTAL** | | | | | | **$39,000.00** |
| | **LEASES & EXECUTORY CONTRACTS** | | | | | | |
| | GE Capital Lease Corporation Post Office Box 740423 Atlanta, Georgia 30374-0423 | | | See Claims 5-7 | | | See Claims 5-7 |
| | LEAF Post Office Box 644006 Cincinnati, OH 45264-40069 | | | | | | |
| | **TOTAL** | | | | | | **$0.00** |
| | **PRIORITY CLAIMS** | | | | | | |
| | Georgia Department of Revenue Bankruptcy Section Post Office Box 161108 Atlanta GA 30321 | X | | $47,088.02 | | | $0.00 |
| | Internal Revenue Service Post Office Box 21126 Philadelphia, PA 19114 | | 1 | | $16,694.55 | 04/28 | $16,694.55 |
| | Aetna Jennifer Hollenberg Aetna- U23S 1425 Union Meeting Road Blue Bell, PA 19422 | | 10 | | $9,121.05 | 07/08 | $9,121.05 |
| | **TOTAL** | | | | | | **$25,815.60** |

page 3

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | **SECURED CLAIMS** | | | | | | |
| | **SECURED CLAIMS - 1**<br>**Series 2007 - I Bondholder**<br>Reliance Trust Co., Trustee for<br>Series 2007-I First Mortgage<br>Bonds of Calvary Baptist<br>c/o John A. Thomson, Jr.<br>Womble Carlyle<br>271 17th Street, N.W., Suite 2400<br>Atlanta GA 30363-1017 | | 17 | $7,000,000.00 | $7,589,045.50 | 08/06 | $7,589,045.50 |
| | **SECURED CLAIMS - 2**<br>**Series 2007 - II Bondholders:**<br>Michael R. Funderburk, LLC<br>Trustee for Series II 2007 Bonds<br>Post Office Box 337<br>Buford GA 30518 | | 15 | $3,019,500.00<br>Composed of the following: | $3,584,083.94<br>$3,019,500.00<br>$564,583.94 | 08/05<br>Principal<br>Interest | $564,583.94<br>(Interest Only) |
| | CHESTER M CARTER &<br>PRISCILLA W CARTER JTWROS<br>309 EAST 54TH STREET<br>SAVANNAH,GA 31405 | | | $15,000.00 | | | $15,000.00 |
| | CLIFFORD J STURTEVANT &<br>MARGARET H STURTEVANT JTWROS<br>90 TIMBERLINE DRIVE<br>SAVANNAH, GA 31404 | | | $1,000.00 | | | $1,000.00 |
| | CLIFFORD J STURTEVANT &<br>MARGARET H STURTEVANT JTWROS<br>90 TIMBERLINE DRIVE<br>SAVANNAH, GA 31404 | | | $3,750.00 | | | $3,750.00 |
| | JOHN JENSEN &<br>FRANCES JENSEN JTWROS<br>3 PARSON LANE<br>SAVANNAH, GA 31411 | | | $25,000.00 | | | $25,000.00 |
| | THOMAS BEVERIDGE<br>274 LAUREL HILL CIRCLE<br>Richmond Hill, GA 31324 | | | $15,000.00 | | | $15,000.00 |
| | RELIANCE TRUST COMPANY CN/A FBO<br>THOMAS G. WORRELL<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $170,000.00 | | | $170,000.00 |
| | JUDITH H BLAKE<br>JAMES G BLAKE JR JTWROS<br>210 BRADLEY POINT RD<br>SAVANNAH, GA 31410 | | | $3,000.00 | | | $3,000.00 |

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | page 4 PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | GUY L ABBOTT & ROSEMARY ABBOTT JTWROS 300 WOODHAVEN DRIVE, APT 1508 HILTON HEAD, SC 29928 | | | $5,000.00 | | | $5,000.00 |
| | CLAUDINE COE 3 WILD HERON VILLAS DRIVE SAVANNAH, GA 31419 | | | $3,000.00 | | | $3,000.00 |
| | ROBERT E HUTCHERSON & MARGARET L HUTCHERSON JT TEN 908 MILL STREAM CT SAVANNAH, GA 31419 | | | $10,000.00 | | | $10,000.00 |
| | DON RB DONALDSON & ANN AG DONALDSON JT TEN 2802 RIVER DRIVE #D-103 THUNDERBOLT, GA 31404 | | | $5,000.00 | | | $5,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO MIRIAM G LEWIS SELF DIRECTED IRA PO BOX 72039 ATLANTA, GA 30358 | | | $5,000.00 | | | $5,000.00 |
| | CAROLYN M KELLY 1 WASHINGTON AVENUE SAVANNAH, GA 31405 | | | $20,000.00 | | | $20,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO WAYNE V. DASHER SELF DIRECTED IRA PO BOX 72039 ATLANTA, GA 30358 | | | $49,000.00 | | | $49,000.00 |
| | WAYNE V DASHER & JOANNE C DASHER JT TEN PO BOX 1323 HARDEEVILLE, SC 29927 | | | $10,000.00 | | | $10,000.00 |
| | EDNA WALDROP HOLDEN TTEE U/A/D 10/27/08 THE EDNA WALDROP HOLDEN 465 OLD COUNTY HOME ROAD BREVARD, NC 28712 | | | $8,000.00 | | | $8,000.00 |
| | EDNA WALDROP HOLDEN TTEE U/A/D 10/27/08 THE EDNA WALDROP HOLDEN 465 OLD COUNTY HOME ROAD BREVARD, NC 28712 | | | $10,000.00 | | | $10,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO GAIL M LEWIS SELF DIRECTED IRA PO BOX 72039 ATLANTA, GA 30358 | | | $5,000.00 | | | $5,000.00 |

page 5

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | JUDY C JAMISON<br>5603 LA SALLE ST<br>SAVANNAH, GA 31405 | | | $21,000.00 | | | $21,000.00 |
| | RELIANCE TRUST COMPANY C\U\A FBO<br>JUDY C. JAMISON<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $5,750.00 | | | $5,750.00 |
| | ASHLEY V FERGUSON &<br>JOSHUA P FERGUSON JT TEN<br>215 MOSSWOOD DR<br>SAVANNAH, GA 31405 | | | $10,000.00 | | | $10,000.00 |
| | ASHLEY V FERGUSON<br>215 MOSSWOOD DR<br>SAVANNAH, GA 31405 | | | $1,000.00 | | | $1,000.00 |
| | MARK SNYDER &<br>CHERIE S SNYDER JTWROS<br>939 OAKWOOD DRIVE<br>HARDEEVILLE, SC 29927 | | | $10,000.00 | | | $10,000.00 |
| | MARY B BUJNAROWSKI<br>465 CEDAR STREET<br>METTER, GA 30439 | | | $25,000.00 | | | $25,000.00 |
| | MARY B BUJNAROWSKI<br>465 CEDAR STREET<br>METTER, GA 30439 | | | $6,000.00 | | | $6,000.00 |
| | RELIANCE TRUST COMPANY C\U\A FBO<br>JOANNE C. DASHER<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $20,500.00 | | | $20,500.00 |
| | RELIANCE TRUST COMPANY C\U\A FBO<br>JACK E. HAMILTON<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $15,000.00 | | | $15,000.00 |
| | MARY E GIBBS<br>1810 GA HWY 21 SOUTH<br>SPRINGFIELD, GA 31329 | | | $50,000.00 | | | $50,000.00 |
| | BILLIE R COLLINS<br>512 CHEVIS ROAD<br>SAVANNAH, GA 31419 | | | $500.00 | | | $500.00 |
| | BILLIE R COLLINS<br>512 CHEVIS ROAD<br>SAVANNAH, GA 31419 | | | $2,000.00 | | | $2,000.00 |

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | page 6 PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | RELIANCE TRUST COMPANY C/U/A FBO GERALD L STRICKLAND PO BOX 720299 ATLANTA, GA 30358 | | | $25,000.00 | | | $25,000.00 |
| | EMMETT COSSEY TOD SHERRY Y COSSEY SUBJECT TO STA TOD RULES 205 HOLIDAY CIRCLE SAVANNAH, GA 31419 | | | $5,000.00 | | | $5,000.00 |
| | SHANE M FINNEGAN 230 EAST 65TH ST SAVANNAH, GA 31405 | | | $500.00 | | | $500.00 |
| | HERBERT R BLACK & JOSIE L BLACK JTWRO 30 WINDOVER LN RICHMOND HILL, GA 31324 | | | $100,000.00 | | | $100,000.00 |
| | BETTY J MILLER & MICHELLE L MILLER JT TEN 5 PUTTERS PLACE SAVANNAH, GA 31419 | | | $250.00 | | | $250.00 |
| | FRANKLIN K ALBRIGHT 54 SILVERSTONE CIRCLE SAVANNAH, GA 31406 | | | $250.00 | | | $250.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO MYRNA T. STRICKLAND SELF DIRECTED IRA PO BOX 720299 ATLANTA, GA 30358 | | | $25,000.00 | | | $25,000.00 |
| | STEPHANIE L BROWN 616 VIRGINIA AVE SAVANNAH, GA 31404 | | | $250.00 | | | $250.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO JUDY N. MASON SELF DIRECTED IRA PO BOX 720299 ATLANTA, GA 30358 | | | $4,000.00 | | | $4,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO ERVIN D. DELOACH SELF DIRECTED IRA PO BOX 720299 ATLANTA, GA 30358 | | | $37,000.00 | | | $37,000.00 |
| | RONALD W. SUMNER 210 OLD LOUISVILLE RD. GUYTON, GA 31312 | | | $14,000.00 | | | $14,000.00 |
| | MARGARET ANDERSON 115 QUACCO SAVANNAH, GA 31419 | | | $10,000.00 | | | $10,000.00 |

page 7

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | TAMERA P MIMS &<br>PAUL E MIMS JT TEN<br>12 TURNING LEAF CT<br>SAVANNAH, GA 31419 | | | $10,000.00 | | | $10,000.00 |
| | AMIEL D FOSTER &<br>DOROTHY M FOSTER JT TEN<br>1011 HEARN STREET<br>SAVANNAH, GA 31415 | | | $1,000.00 | | | $1,000.00 |
| | STEVEN C COOLER &<br>ELAINE S COOLER JT TEN<br>205 BURTON ROAD<br>SAVANNAH, GA 31405 | | | $5,000.00 | | | $5,000.00 |
| | THOMAS G GAMMON &<br>JENNIFER O GAMMON JTWROS<br>6 RIVER BLUFF DR.<br>SAVANNAH, GA 31406 | | | $1,000.00 | | | $1,000.00 |
| | RALPH T FINNEGAN &<br>ROSALYN K FINNEGAN JT TEN<br>1839 WALTHOUR RD<br>SAVANNAH, GA 31410 | | | $25,000.00 | | | $25,000.00 |
| | CHARLES G COOPER &<br>LINDA T COOPER JTWROS<br>14 PURPLE MARTIN LANE<br>SAVANNAH, GA 31419 | | | $250.00 | | | $250.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>MELINDA B. TUCKER<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $68,500.00 | | | $68,500.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>SHELBY M PRITCHETT<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $11,000.00 | | | $11,000.00 |
| | SUZANNE C COWART<br>TOD ASHLEY J COWART<br>SUBJECT TO STA TOD RULES<br>131 COLUMBUS DRIVE<br>SAVANNAH, GA 31405 | | | $15,000.00 | | | $15,000.00 |
| | SUZANNE C COWART<br>TOD BRIAN S COWART<br>SUBJECT TO STA TOD RULES<br>131 COLUMBUS DRIVE<br>SAVANNAH, GA  31405 | | | $15,000.00 | | | $15,000.00 |
| | JANICE JOHNSON<br>TOD IRA W CLAIBORNE<br>87 FALKLAND AVE<br>POOLER, GA 31322 | | | $10,000.00 | | | $10,000.00 |

*page 8*

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | PLAN AMOUNT |
|-------|--------------|----------|---------|--------------------|--------------------|--------------------|--------------------|
| | RELIANCE TRUST COMPANY C/U/A FBO<br>RICKY L ZEIGLER<br>SELF DIRECTED ROTH IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $2,000.00 | | | $2,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>SHIRLEY T GOODSON<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $11,000.00 | | | $11,000.00 |
| | GLORIA A SUMNER<br>7 TOWER DRIVE<br>SAVANNAH, GA 31405 | | | $85,000.00 | | | $85,000.00 |
| | ROBERT J MORROW &<br>JOHNNIE S MORROW JT TEN<br>6 TILLER PT<br>SAVANNAH, GA 31419 | | | $5,000.00 | | | $5,000.00 |
| | GAIL R JONES<br>108 BROOK CIRCLE<br>GUYTON, GA 31312 | | | $2,500.00 | | | $2,500.00 |
| | CARL F WARD JR.<br>19 WOODLAND CREEK RD<br>SAVANNAH, GA 31405 | | | $500.00 | | | $500.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>DONALD E DYCHES<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $12,000.00 | | | $12,000.00 |
| | SYBIL P CRIBBS<br>8724 HURST AVE<br>SAVANNAH, GA 31406 | | | $250.00 | | | $250.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>HOLBROOK L MASON<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $7,250.00 | | | $7,250.00 |
| | LEANDER P SAMS &<br>DYONNE SAMS JTWROS<br>9516 DUNWOODY DR.<br>SAVANNAH, GA 31406 | | | $500.00 | | | $500.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>CAROL C. BLOCKER<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $8,000.00 | | | $8,000.00 |

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | page 9<br>PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | DOROTHY Z KICKLIGHTER<br>237 ANDOVER DR<br>SAVANNAH, GA 31405 | | | $2,500.00 | | | $2,500.00 |
| | JOANNE MACKEY<br>TOD MELANIE M GUY<br>SUBJ TO STA TOD RULES<br>201 MARINERS WAY<br>SAVANNAH, GA 31419 | | | $20,000.00 | | | $20,000.00 |
| | RAILFORD R COWART &<br>PATRICIA R COWART JTWROS<br>8542 HEATHERWOOD<br>SAVANNAH, GA 31406 | | | $500.00 | | | $500.00 |
| | LATRELLE SMILEY<br>TOD JOHNNIE F MORROW<br>SUBJECT TO STA TOD RULES<br>455 MALL BLVD - UNIT 85<br>SAVANNAH, GA 31406 | | | $10,000.00 | | | $10,000.00 |
| | RELIANCE TRUST COMPANY FBO<br>JUDY F. NEWSOME<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $5,000.00 | | | $5,000.00 |
| | SHIRLEY M GAMBLE<br>TOD JOHN L GAMBLE<br>120 OVERLAND TRAIL<br>SAVANNAH, GA 31419 | | | $10,000.00 | | | $10,000.00 |
| | LINDA FOUNTAIN<br>116 WEDGEFIELD CROSSING<br>SAVANNAH, GA 31405 | | | $5,000.00 | | | $5,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>JOHN S. CONNELL<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $52,500.00 | | | $52,500.00 |
| | SHERRY C BENNETT<br>520 JUNCTION POINT<br>ROSWELL, GA 30075 | | | $100,000.00 | | | $100,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>SHERRY BENNETT<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $4,000.00 | | | $4,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>PHILLIP A CONNELL SR<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $71,250.00 | | | $71,250.00 |

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | page 10 PLAIN AMOUNT |
|---|---|---|---|---|---|---|---|
| | FLORINE MCLAUGHLIN<br>1905 LANDRIDGE DR.<br>ALLEN, TX 75013 | | | $500.00 | | | $500.00 |
| | MARY C. O'LOUGHLIN<br>TOD PATRICIA O. RANN<br>SUBJ TO STA TOD RULES<br>1 PEACHTREE DR., APT 117<br>SAVANNAH, GA 31419 | | | $50,000.00 | | | $50,000.00 |
| | MARY C. O'LOUGHLIN &<br>MARY O. MYERS JT TEN<br>1 PEACHTREE DR., APT 117<br>SAVANNAH, GA 31419 | | | $50,000.00 | | | $50,000.00 |
| | MARY C. O'LOUGHLIN &<br>BARBARA O. WESTERFIELD JT TEN<br>1 PEACHTREE DR., APT 117<br>SAVANNAH, GA 31419 | | | $50,000.00 | | | $50,000.00 |
| | JUDY G DIEDERICH<br>56 WHITE OAK BLUFF<br>SAVANNAH, GA 31405 | | | $1,000.00 | | | $1,000.00 |
| | MARCUS D. DUKES<br>15800 B E SMITH ROAD<br>DAISY, GA 30423 | | | $10,000.00 | | | $10,000.00 |
| | NORMAN E TILLMAN &<br>EILEEN E TILLMAN JT TEN<br>705 WHIPPOORWILL RD<br>SAVANNAH, GA 31410 | | | $30,000.00 | | | $30,000.00 |
| | NORMAN E TILLMAN &<br>EILEEN E TILLMAN JT TEN<br>705 WHIPPOORWILL RD<br>SAVANNAH, GA 31410 | | | $55,000.00 | | | $55,000.00 |
| | SALLY R BLAINE<br>1304 BACON PARK DR.<br>SAVANNAH, GA 31406 | | | $5,000.00 | | | $5,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>TERRY R. DURRENCE<br>SELF DIRECTED IRA<br>PO BOX 720289<br>ATLANTA, GA 30358 | | | $6,750.00 | | | $6,750.00 |
| | WOODROW DYCHES &<br>JENNIFER DYCHES JT TEN<br>39 AMANDA DRIVE<br>SAVANNAH, GA 31406 | | | $15,000.00 | | | $15,000.00 |
| | PATSY B GILL<br>58 OLDE TOWNE PLACE DR<br>SAVANNAH, GA 31410 | | | $5,000.00 | | | $5,000.00 |

page 11

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | PLAN AMOUNT |
|-------|--------------|----------|---------|--------------------|-----------------|--------------------|-------------|
| | JAMES C. BRAGG<br>5009 COMPTON ROAD<br>SAVANNAH, GA 31404 | | | $10,000.00 | | | $10,000.00 |
| | RICHARD R CANADY<br>9133 WHITFIELD AVE<br>SAVANNAH, GA 31406 | | | $100,000.00 | | | $100,000.00 |
| | RICHARD R CANADY<br>9133 WHITFIELD AVE<br>SAVANNAH, GA 31406 | | | $100,000.00 | | | $100,000.00 |
| | PEGGY GILMORE<br>100 GOT NO LANE<br>PORTAL, GA 30450 | | | $5,000.00 | | | $5,000.00 |
| | RALPH WRIGHT<br>407 NOEL C. CONAWAY RD.<br>GUYTON, GA 31312 | | | $10,000.00 | | | $10,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>CAMERON C. DE LOACH<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $32,500.00 | | | $32,500.00 |
| | SUE R JACKSON &<br>SAMUEL T JACKSON JT TEN<br>2221 NOEL CONAWAY ROAD<br>GUYTON, GA 31312 | | | $3,000.00 | | | $3,000.00 |
| | JAMES D LAMB<br>626 ROSE DHU RD<br>SAVANNAH, GA 31419 | | | $1,000.00 | | | $1,000.00 |
| | SHIRLEY D MINICK<br>44 JAMESWOOD AVE<br>SAVANNAH, GA 31406 | | | $135,000.00 | | | $135,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>CECIL E. DEAL<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $25,000.00 | | | $25,000.00 |
| | GRADY A SALTER<br>BRENDA N SALTER JTWROS<br>147 SAPELO CIR<br>TOWNSEND, GA 31331 | | | $50,000.00 | | | $50,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>CHERYL Y. OGLESBY<br>SELF DIRECTED IR<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $15,000.00 | | | $15,000.00 |
| | HAZEL L BRANNEN<br>322 E TAYLOR ST APT 104<br>SAVANNAH, GA 31401 | | | $1,000.00 | | | $1,000.00 |

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | page 12 PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | RICHARD D SMILEY PATRICIA G SMILEY JTWROS 118 COMPANION WAY SAVANNAH, GA 31419 | | | $1,000.00 | | | $1,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO FAYE C. DYCHES SELF DIRECTED IRA PO BOX 720239 ATLANTA, GA 30358 | | | $1,250.00 | | | $1,250.00 |
| | ASHLEY C MIMS 12 TURNING LEAF CT SAVANNAH, GA 31419 | | | $250.00 | | | $250.00 |
| | JOHN J RAUERS 231 COMMODORA DR SAVANNAH, GA 31410 | | | $20,000.00 | | | $20,000.00 |
| | DEBORAH L MIXON 7 AVENUE OF PINES SAVANNAH, GA 31406 | | | $25,000.00 | | | $25,000.00 |
| | MICKELL L WEST & NANCY G WEST JT TEN 714 EAST 57TH STREET SAVANNAH, GA 31405 | | | $25,000.00 | | | $25,000.00 |
| | ROY T PAGE & PAM C PAGE JTWROS 106 SHAMROCK CIRCLE SAVANNAH, GA 31406 | | | $2,000.00 | | | $2,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO SHARRON W. ODOM SELF DIRECTED IRA PO BOX 720239 ATLANTA, GA 30358 | | | $19,500.00 | | | $19,500.00 |
| | CHARLES W GAINES & GINGER S GAINES JT TEN 1599 LEAF LANE ASHLAND CITY, TN 37015 | | | $10,000.00 | | | $10,000.00 |
| | BERNARD E JOHNSON TOD JACQUELYN G JOHNSON SUBJECT TO STA TOD RULES 508 LAKE VIEW DR. RINCON, GA 31326 | | | $10,000.00 | | | $10,000.00 |
| | CHAUNCEY G. LAIDLAW & MARJORIE G. LAIDLAW JTWROS 440 EAST BAY STREET JESUP, GA 31546 | | | $10,000.00 | | | $10,000.00 |
| | LINDA BURDETTE 513 EAST 62ND STREET SAVANNAH, GA 31405 | | | $250.00 | | | $250.00 |

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | page 13<br>PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | LARRY H WHITE &<br>SUSAN S WHITE JT TEN<br>333 EARLY STREET<br>SAVANNAH, GA 31405 | | | $5,000.00 | | | $5,000.00 |
| | LAWRENCE R LIGHTSEY &<br>SHARON M LIGHTSEY JT TEN<br>4 BRISBANE COURT<br>SAVANNAH, GA 31411 | | | $1,000.00 | | | $1,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>SUSAN S WHITE<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $5,000.00 | | | $5,000.00 |
| | CHERYL A. TURNER<br>103 LAGOON VIEW CROSSING<br>SAVANNAH, GA 31410 | | | $12,000.00 | | | $12,000.00 |
| | ANDREW H ABBOTT&<br>LADONNA S ABBOTT JT TEN<br>12300 APACHE AVENUE UNIT 412<br>SAVANNAH, GA 31419 | | | $10,000.00 | | | $10,000.00 |
| | MARY CARRIGER<br>3 DIAMOND LOOP<br>HARDEEVILLE, SC 29927 | | | $3,750.00 | | | $3,750.00 |
| | DAVID A MAULE &<br>BETSY A MAULE JT TEN<br>1419 CEDAR GROVE PLANTATION DR<br>SAVANNAH, GA 31419 | | | $1,000.00 | | | $1,000.00 |
| | CHARITY A EDWARDS<br>9206 ALTA TOWNE LAKE CIRCLE<br>POOLER, GA 31322 | | | $500.00 | | | $500.00 |
| | PHILIP T NEWTON &<br>PATRICIA P NEWTON JT TEN<br>411 N WINDWARD DRIVE<br>ST SIMONS ISLAND, GA 31522 | | | $10,000.00 | | | $10,000.00 |
| | ALVIN A. CULBRETH<br>102 GREENVIEW DRIVE<br>SAVANNAH, GA 31405 | | | $30,000.00 | | | $30,000.00 |
| | ROBERT A SAULTER &<br>T'LENE SAULTER JT TEN<br>4 REDWOOD CIR<br>SAVANNAH, GA 31419 | | | $10,000.00 | | | $10,000.00 |
| | PHIL J FERGUSON &<br>MARSHA L FERGUSON JT TEN<br>7 BARONS WAY<br>SAVANNAH, GA 31419 | | | $2,000.00 | | | $2,000.00 |

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | page 14<br>PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | RELIANCE TRUST COMPANY C/U/A FBO<br>RICKIE A. PEARSON<br>SELF DIRECTED ROTH IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $20,000.00 | | | $20,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>RICHARD C. BIRKNER<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $245,000.00 | | | $245,000.00 |
| | JANE C. LEWIS<br>68 KNOLLWOOD CIRCLE<br>SAVANNAH, GA 31419 | | | $500.00 | | | $500.00 |
| | LINDA A BENNETT<br>312 E 53RD ST<br>SAVANNAH, GA 31405 | | | $1,000.00 | | | $1,000.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>TAMI J. PATTEN<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $1,750.00 | | | $1,750.00 |
| | RELIANCE TRUST COMPANY C/U/A FBO<br>TIMOTHY A. PATTEN<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA. 30358 | | | $20,750.00 | | | $20,750.00 |
| | CALVARY DAY SCHOOL<br>4625 WATERS AVE<br>SAVANNAH, GA 31404 | | | $250,000.00 | | | $250,000.00 |
| | R.W. SCARBROUGH, JR. M.D. P. C.,<br>PROFIT SHARING PLAN DATED 8/25/200<br>620 DANCY AVENUE<br>SAVANNAH, GA 31419 | | | $50,000.00 | | | $50,000.00 |
| | ERICKSON ASSOCIATES INC<br>c/o James P. Gerard, Esq.<br>Oliver Maner, LLP<br>Post Office Box 10186<br>Savannah GA 31412 | | 9<br>See Claim 15 | $100,000.00 | $116,632.56<br>See Claim 15 | 06/15 | $100,000.00 |
| | RELIANCE TRUST COMPANY C/U/A<br>FBO ZURIEL LOZANO<br>SELF DIRECTED IRA<br>PO BOX 720299<br>ATLANTA, GA 30358 | | | $10,000.00 | | | $10,000.00 |
| | CRISTINA R LOZANO<br>TOD ZURIEL LOZANO<br>SUBJECT TO STA TOD RULES<br>116 CHALICE WAY<br>SAVANNAH, GA 31419 | | | $3,000.00 | | | $3,000.00 |

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | page 15 PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | ALCIDES LOZANO RODRIGUEZ TOD ZURIEL LOZANO SUBJECT TO STA TOD RULES 116 CHALICE WAY SAVANNAH, GA 31419 | | | $10,000.00 | | | $10,000.00 |
| | WAYNE & GLORIA SUMNER 7 TOWER DRIVE SAVANNAH, GEORGIA 31405 | | | | | | |
| | RICHARD R. CANADY 9138 WHITEFIELD AVENUE SAVANNAH, GEORGIA 31406 | | | | | | |
| | SECURED CLAIMS - 3 SunTrust Bank Post Office Box 8668 Savannah GA 31412 | | | $6,100,000.00 | | | $6,100,000.00 |
| | SunTrust Bank c/o David W. Cranshaw Morris, Manning & Martin, LLP 3343 Peachtree Road, NE, Ste 1600 Atlanta, GA 30326 | | 19 | $2,800,000.00 | $3,558,737.94 | 08/06 | $3,558,737.94 |
| | SunTrust Bank Post Office Box 8668 Savannah GA 31412 | | | $758,737.94 | | | $758,737.94 |
| | Erickson Associates c/o James P. Gerard, Esq. Oliver Maner, LLP Post Office Box 10186 Savannah GA 31412 | | 9 | $1,380.22 (Trade Debt per schedules) See Unsecured Claims | $116,632.56 Series II bondholder | 06/15 | See Claim 15 |
| | CMAC Funding I, LLC (Series I) c/o Thomas R. Walker McGuire Woods, LLP 1170 Peachtree Street, NE, Suite 2100 Atlanta, GA 30309 | | 24 | | $7,503,153.47 Duplicate of Columbus Nova | 08/09 | $0.00 Duplicate |
| | TOTAL | | | | | | $21,590,605.32 |

page 16

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | **GENERAL UNSECURED CLAIMS** | | | | | | |
| | Bio Corporation<br>3910 Minnesota Street<br>Alexandria MN 56308 | | | $1,635.49 | | | $1,635.49 |
| | Capital One FSB<br>Post Office Box 70884,<br>Charlotte NC 28272-0884 | | | $431.65 | | | $431.65 |
| | CDW Government<br>75 Remittance Drive<br>Suite 1515<br>Chicago IL 60675-1515 | | | $205.37 | | | $205.37 |
| | Coastal Capital Advisors<br>800 Commerical Court<br>Suite 2<br>Savannah GA 31406 | | | $2,626.88 | | | $2,626.88 |
| | Coastal Paper Sail<br>574 Indian Street<br>Savannah GA 31402 | | | $1,026.90 | | | $1,026.90 |
| | Dan Deloach<br>12 Kolb Drive<br>Savannah GA 31406-3225 | | | $77,000.00 | | | $77,000.00 |
| | Gary Allen<br>11 Dolan Avenue<br>Savannah GA 31404-5201 | | | $433.50 | | | $433.50 |
| | General Electric Capital Corp<br>1010 Thomas Edison Blvd, SW<br>Cedar Rapids, IA 52404 | | 5 | $875.99 | $20,219.86 | 05/06 | $20,219.86 |
| | Hutson Plumbing<br>329 Bonaventure Road<br>Savannah GA 31404 | | | $11,874.50 | | | $11,874.50 |
| | Infinite Energy<br>Attn: Andrea McHenry<br>7001 SW 24th Avenue<br>Gainesville, FL 32607 | | 14 | $2,666.82 | $1,218.59 | 07/30 | $1,218.59 |
| | Inglesby, Falligant, Horne, Courington<br>& Chisholm, P.C.<br>Post Office Box 1368<br>Savannah GA 31402 | | 8 | $1,062.00 | $4,274.75 | 05/06 | $4,274.75 |
| | James W. Buckley<br>114 North Green Street<br>Swainsboro GA 30401 | X | 2 | $53,692.00 | $53,600.92 | 04/19 | $53,600.92 |
| | Kern-Coleman & Co., LLC<br>Post Office Box 151179<br>Savannah GA 31416 | | 3 | $7,815.00 | $7,815.00 | 04/19 | $7,815.00 |

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | page 17 PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | National Envelope Corporation<br>Attn: Valerie Skrivanek<br>3211 Internet Blvd, Suite 200<br>Frisco, TX 75034 | | 4 | $1,875.60 | $1,785.60 | 05/15 | $1,785.60 |
| | Richard and Emily Jowers<br>c/o J. Scott Vaughan, Esq.<br>340 Eisenhower Drive, Suite 1301<br>Savannah, Georgia 31406 | X | | $0.00 | | | $0.00 |
| | Stagefront Presentations<br>6 Southern Oak Drive<br>Savannah GA 31405 | | 38 | $1,368.08 | | | $1,368.08 |
| | The Haskins Company<br>Post Office Box 16407<br>Augusta GA 30919-2427 | | | $1,993.94 | | | $1,993.94 |
| | Total Networking Consulting<br>Post Office Box 16899<br>Savannah GA 31406-6899 | | | $455.58 | | | $455.58 |
| | U.S. Food Service<br>Post Office Box 602220<br>Charlotte NC 28260-2220 | | | $1,078.34 | | | $1,078.34 |
| | General Electric Capital Corp.<br>1010 Thomas Edison Blvd, SW<br>Cedar Rapids, IA 52404 | | 6 | | $19,770.74 | 05/06 | $19,770.74 |
| | General Electric Capital Corp.<br>1010 Thomas Edison Blvd, SW<br>Cedar Rapids, IA 52404 | | 7 | | $12,208.10 | 05/06 | $12,208.10 |
| | Emmett Cossey<br>205 Holiday Cir<br>Savannah, GA 31419 | | 11 | | $5,483.55<br>Series II bondholder | 07/23 | See Claim 15 |
| | Janice Johnson<br>87 Falkland Avenue<br>Pooler, GA 31322 | | 12 | | $10,000.00<br>Series II bondholder | 07/29 | See Claim 15 |
| | Gloria A. Sumner<br>7 Tower Drive<br>Savannah, GA 31405 | | 13 | | $85,000.00<br>Series II bondholder | 07/30 | See Claim 15 |
| | Thomas G. Worrell<br>255 Oak Ridge Circle<br>Richmond Hill, GA 31324 | | 16 | | $192,267.01<br>Series II bondholder | 08/05 | See Claim 15 |
| | Richard R. Canady<br>9133 Whitefield Avenue<br>Savannah, GA 31406 | | 18 | | $232,954.06<br>Series II bondholder | 08/06 | See Claim 15 |
| | Mary Elizabeth O. Myers<br>244 S. Alta Vista Lane<br>Pueblo, CO 81007 | | 20 | | $58,316.28<br>Series II bondholder | 08/06 | See Claim 15 |

page 18

| CLASS | CLAIM STATUS | DISPUTED | CLAIM # | CLAIM AS SCHEDULED | CLAIM AS FILED | CLAIM FILED DATED | PLAN AMOUNT |
|---|---|---|---|---|---|---|---|
| | Patricia O. Rann<br>9757 Hightower Road<br>Roswell, GA 30075-4102 | | 21 | | $58,316.28<br>Series II bondholder | 08/06 | See Claim 15 |
| | Barbara O. Westfield<br>1283 S. Barksdale Road<br>Mt. Pleasant, SC 29464 | | 22 | | $58,316.28<br>Series II bondholder | 08/06 | See Claim 15 |
| | Ralph Wright, bond holder<br>c/o Charles C. Grile, Attorney<br>Post Office Box 863<br>Pooler, GA 31322 | | 23 | | $12,027.74<br>Series II bondholder | 08/09 | See Claim 15 |
| | Rosemary Abbott<br>215 Windemere Isle Road<br>Statesville, NC 28677 | | 25 | | $5,000.00<br>See II bondholder | 08/09 | See Claim 15 |
| | Shirley Gamble<br>120 Overland Trail<br>Savannah, GA 31419 | | 26 | | $10,000.00 | 08/16 | $10,000.00 |
| | Erickson Associates<br>c/o James P. Gerard, Esq.<br>Oliver Maner, LLP<br>Post Office Box 10186<br>Savannah GA 31412 | | 9 | $1,380.22 | | | $1,380.22 |
| TOTAL | | | | | | | $232,404.01 |

**FILED**

Samuel L. Kay, Clerk
United States Bankruptcy Court
Brunswick, Georgia
*By cking at 2:39 pm, Jan 18, 2011*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CALVARY BAPTIST TEMPLE, INC. | ) | Case No.: 10-40754 |
| | ) | |
|    Debtor. | ) | |
| ------------------------------------------------ | ) | |
| RELIANCE TRUST COMPANY, | ) | |
| | ) | |
|    Movant, | ) | |
| | ) | |
| v. | ) | **CONTESTED MATTER** |
| | ) | |
| CALVARY BAPTIST TEMPLE, INC. | ) | |
| | ) | |
|    Respondent. | ) | |

### ORDER ON RELIANCE TRUST COMPANY'S
### MOTION FOR RELIEF FROM STAY

The above referenced matter came on before the Court on October 18, 2010, on the

Motion for Relief From Stay (the "Motion") filed by Reliance Trust Company ("Reliance"), in

its capacity as the Indenture Trustee for the Series 2007-I First Mortgage Bonds (the "Bonds")

issued by Calvary Baptist Temple, Inc. (the "Debtor"), debtor and debtor in possession in the

above-captioned action. At the hearing, counsel for Reliance and Calvary jointly announced that

the parties had reached a settlement in principle of the issues raised in Reliance's Motion. After

having heard from counsel for the parties present at the hearing, and reviewing all pleadings of

record in this action, and further in accordance with the terms of the consensual settlement

embodied in the Settlement Agreement that the parties have executed, this Court finds and orders

as follows:

WCSR 4530022v1

Exhibit C

1. On April 6, 2010, the Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. 101 et seq. (the "Code"), and continues to operate its business and manage its property as debtor-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

2. Among other property owned by Debtor, the Debtor owns certain real property consisting of 214.2 acres, more or less, located on Veterans Parkway, Savannah, Chatham County, Georgia (the "Property"). The Debtor had planned to develop the Property into a multi-use campus facility.

3. The Debtor issued the Bonds in order to raise a portion of the funds necessary to obtain the Property.    Reliance serves as the Indenture Trustee for the Bonds pursuant to a Trust Indenture dated November 1, 2007.

4. Beneficial title to the Bonds is now held by CMAC Funding I, LLC ("CMAC Funding").

5. In order to secure repayment of the Bonds, Reliance, as trustee, holds a properly perfected first priority lien on the Property.

6. Due to the economic downturn and for other reasons, the Debtor was unable to undertake the development of the Property.

7. The Debtor wishes to resolve the debt obligation associated with the Bonds, which it incurred in connection with the acquisition of the Property.

8. The Debtor, Reliance and CMAC Funding, as well as certain parties associated with CMAC Funding, have each executed a comprehensive written Settlement Agreement that i) provides for the eventual satisfaction of the debt due and owing to Reliance, as trustee and senior secured lien holder, and ii) provides the Debtor with an opportunity to propose and confirm a

WCSR 4530022v1

Chapter 11 Plan of Reorganization that a) allows the Debtor, or its designee, to retain a portion of the Property, and b) provides a mechanism whereby the holders of the Series 2007-II Second Mortgage Bonds of Calvary Baptist Temple (the "Second Mortgage Bonds"), which the Debtor issued in connection with the acquisition of the Property, and which are secured by a subordinate lien on the Property, may receive a return on their Second Mortgage bonds, over time, based on the future development of a portion of the Property.

9. The Settlement Agreement has been fully executed by the Debtor, Reliance, and each of CMAC Funding, Church Mortgage Acceptance Co., LLC; Columbus Nova Commercial Real Estate Acquisition Group LLC; and Columbus Nova Commercial Mortgage Servicing LLC, (sometimes hereinafter collectively referred to as the "CMAC Parties"). A true and correct copy of the fully executed Settlement Agreement is attached hereto as Exhibit "A".

10. The Settlement Agreement resolves the issues presented, and the relief sought, by Reliance in the Motion.

11. The Settlement Agreement provides Reliance with appropriate relief, as sought in the Motion and as provided in the Bankruptcy Code, and provides the Debtor with certain rights and benefits that are in the best interest of the Debtor and the Estate. Therefore, it is hereby,

ORDERED AND ADJUDGED as follows:

A. Reliance's Motion is herewith GRANTED, subject to all of the terms and conditions of the Settlement Agreement.

B. The automatic stay arising out of the above captioned action is herewith LIFTED as to the portions of the Property designated in the Settlement Agreement, such that Reliance is herewith authorized to exercise its contractual and state law rights and

remedies as to that portion of the Property, without further hearing or order from this Court.

C. The Settlement Agreement the Debtor, Reliance and the CMAC Parties have each executed is herewith approved in all respects, and shall be effective upon entry of this Order. Each of the parties to the Settlement Agreement is herewith authorized to implement, carry out, rely upon and enforce the Settlement Agreement in accordance with its terms.

D. This Court shall retain jurisdiction over the Settlement Agreement, and each of the parties thereto, in the event that it becomes necessary to adjudicate or enforce any of the terms or conditions of the Settlement Agreement.

E. Nothing in this order shall constitute or be deemed res judicata or collateral estoppel with respect to, or otherwise affect, CMAC Funding's rights as secured lender with respect to the Bonds, proceeds of the Bonds or any other collateral identified in that certain Loan, Pledge and Security Agreement dated November 30, 2007 originally between the Debtor and Church Mortgage Acceptance Co., LLC or any collateral identified in any related loan documents.

SO ORDERED

DATED: _January 18, 2011_

HONORABLE JOHN S. DALIS
United States Bankruptcy Judge

*[Signatures of Counsel Appear on the Following Page]*

PRESENTED BY, AND CONSENTED TO:

**MCCALLAR LAW FIRM**

__/s/ C. James McCallar, Jr._____
C. James McCallar, Jr.
Georgia Bar Number 481400

**Attorney for Debtor Calvary Baptist Temple**

P.O. Box 9026
Savannah, GA 31412
(912) 234-1215

CONSENTED TO:

**WOMBLE, CARLYLE, SANDRIDGE & RICE, PLLC**

___/s/ John A. Thomson, Jr._____
John A. Thomson, Jr.
Georgia Bar Number 706760
(Admitted by Pro Hac Vice)

**Attorney for Creditor Reliance Trust Company**

Suite 2400, 271 17th Street
Atlanta, Georgia 30363-1017
(404)888-7409

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into this ___ day of November, 2010, by and among Calvary Baptist Temple (the "Church"), as party of the first part, and Reliance Trust Company ("Reliance"), in its capacity as the Indenture Trustee for the Series 2007-I First Mortgage Bonds issued by the Church; Church Mortgage Acceptance Co., LLC; Columbus Nova Commercial Real Estate Acquisition Group LLC; Columbus Nova Commercial Mortgage Servicing LLC, and CMAC Funding I LLC ("CMAC Funding", and Church Mortgage Acceptance Co., LLC; Columbus Nova Commercial Real Estate Acquisition Group LLC; Columbus Nova Commercial Mortgage Servicing LLC, and CMAC Funding sometimes hereinafter collectively referred to as the "CMAC Parties"), as the parties of the second part. Reliance, Church Mortgage Acceptance Co., LLC; Columbus Nova Commercial Real Estate Acquisition Group LLC; Columbus Nova Commercial Mortgage Servicing LLC, CMAC Funding and the Church are sometimes referred to individually as "Party", or collectively as the "Parties."

### W I T N E S S E T H:

WHEREAS, on or about November 1, 2007, the Church and Reliance entered into a "Trust Indenture" under which Reliance has served as Indenture Trustee for the Series 2007-I First Mortgage Bonds (the "Bonds") issued by the Church; and

WHEREAS, the Series 2007-I bond issue contained Bonds with a face amount of $7,000,000.00; and

WHEREAS, a portion of the Bonds, with an aggregate face amount of $4,000,000.00, mature and are payable in full on October 20, 2011, and bear interest at the rate of 7.25% per

annum. The remainder of the Bonds, with a face amount of $3,000,000.00, mature and are payable in full on October 20, 2012, and bear an interest rate of 8.0% per annum; and

WHEREAS, the Church purchased the Bonds, and the Church remains the title owner of the Bonds; and

WHEREAS, in order to secure repayment of the Bonds, the Trust Indenture conveyed to Reliance, as Trustee for the Bonds, a first-priority security interest in and to certain property of the Church consisting of 214.2 acres, more or less, located on Veterans Parkway, Savannah, Chatham County, Georgia (the "Property") ; and

WHEREAS, in order to further evidence the Church's grant of a security interest in the Property to Reliance, on November 30, 2007, the Church executed that certain "Deed to Secure Debt, Assignment of Rents and Security Agreement" (the "Security Deed"), wherein it conveyed to Reliance, as Trustee, a first priority security interest in and to the Property; and

WHEREAS, in order to perfect its security interest in the Property, on November 2, 2007, Reliance recorded (i) the Trust Indenture in the real property records maintained by the Clerk of the Superior Court of Chatham County, Georgia, at Deed Book 333T, Page 522; and (ii) the Security Deed in the real property records for Chatham County at Deed Book 334V, Page 473, as re-recorded in Deed Book 335N, Page 543; and

WHEREAS, on or about November 1, 2007, the Church and Michael J. Funderburk, LLC ("Funderburk") entered into a "Trust Indenture" (the "Series II Trust Indenture") under which Funderburk would serve as Indenture Trustee for the Series 2007-II Second Mortgage Bonds (the "Series II Bonds") to be issued by the Church; and

WHEREAS, the Series 2007-II bond issue contained bonds with a face amount of $6,200,000.00; and

WHEREAS, individuals and other entities purchased $3,019,500.00 in face amount of the Series II Bonds, and these individuals and entities (the "Series II Bondholders") continue to hold these Series II Bonds; and

WHEREAS, in order to secure repayment of the Series II Bonds, the Series II Trust Indenture conveyed to Funderburk, as Trustee for the Series II Bonds, a second-priority security interest in the Property; and

WHEREAS, in order to further evidence the Church's grant of a security interest in the Property to Funderburk, as Trustee, on November 30, 2007, the Church executed that certain "Deed to Secure Debt, Assignment of Rents and Security Agreement" (the "Series II Security Deed"), wherein it conveyed to Funderburk, as Trustee, a second priority security interest in and to the Property; and

WHEREAS, in order to perfect the Series II Bondholders' second priority security interest in the Property, on November 2, 2007, Funderburk recorded (i) the Series II Trust Indenture in the real property records maintained by the Clerk of the Superior Court of Chatham County, Georgia, at Deed Book 333 T, Page 568; and (ii) the Series II Security Deed in the real property records for Chatham County at Deed Book 334 Y, Page 483; re-recorded at Deed Book 335 N, Page 553; and

WHEREAS, on November 30, 2007 the Church executed a Promissory Note (the "CMAC Note") in favor of Church Mortgage Acceptance Co., LLC ("CMAC") in the face amount of $7,000,000.00; and

WHEREAS, under the transaction with CMAC, CMAC advanced $7,000,000.00 in cash to the Church, which the Church used to fund the purchase of the Bonds. The Church then used

the proceeds from the sale of the Bonds to pay a portion of the purchase price for the Property; and

WHEREAS, in order to secure repayment of the CMAC Note, the Church executed that certain Loan, Pledge and Security Agreement of even date with the CMAC Note (the "Pledge Agreement"), wherein it conveyed to CMAC a first-priority security interest in the Bonds, and further assigned to CMAC all of the rights and privileges of the Church, as the holder of the Bonds (the "Bondholder"); and

WHEREAS, under the Pledge Agreement, CMAC is entitled to receive all payments of principal and interest that the Church makes under the Trust Indenture, including, but not limited to, the quarterly payments of interest due to the Bondholder; and

WHEREAS, by an Allonge dated November 30, 2007, and an Assignment of Loan, Pledge and Security Agreement, Control Agreement and Other Loan Documents dated as of November 19, 2009, CMAC assigned the CMAC Note and the Pledge Agreement to CN CMAC LLC. By an Allonge dated November 30, 2007, and an Assignment of Loan, Pledge and Security Agreement, Control Agreement and Other Loan Documents dated November 19, 2009, CN CMAC LLC assigned the CMAC Note and the Pledge Agreement to CMAC Funding. CMAC Funding became, and remains, the payee under the CMAC Note, and the entity that holds (i) the first-priority security interest in the Bonds, and (ii) the rights and privileges of the Bondholder; and

WHEREAS, under the terms of the Trust Indenture, the Church is currently obligated to remit to Reliance a monthly payment in the amount of $44,454.39 (the "Sinking Fund Payment"), which is to be deposited into a sinking fund that Reliance maintains as Trustee for the Bondholder; and

WHEREAS, beginning on October 20, 2011, after the maturity and payment in full of the first $4,000,000.00 of the Bonds, the monthly Sinking Fund Payment obligation will drop to $20,287.73; and

WHEREAS, under the terms of the Trust Indenture, on each of January 20, April 20, July 20 and October 20 of each year Reliance, as Trustee, is to make a distribution to the Bondholder of the interest due on the Bonds in the amount of $132,500.00, which distribution is payable to CMAC Funding pursuant to the Pledge Agreement and the Control Agreement by and among Reliance, CMAC and the Church of even date with the CMAC Note (the "Control Agreement"); and

WHEREAS, the Church has not made a regular Sinking Fund Payment to Reliance since September, 2009. As a consequence, as of May 4, 2010, the Church was in arrears to Reliance under the terms of the Trust Indenture in the amount of $350,685.52, and interest has continued to accrue since that date; and

WHEREAS, using the Sinking Fund Payments made by the Church in July, August and September, 2009, Reliance paid to CMAC Funding the interest payment due on October 20, 2009. The Church failed to provide Reliance with adequate funds to make the distributions of interest to CMAC Funding that were due to be made on January 20, 2010, April 20, 2010, July 20, 2010, and October 20, 2010; and

WHEREAS, as a result of the Church's failure to provide Reliance with adequate funds to make the January 20, 2010 and April 20, 2010 distributions of accrued interest to CMAC Funding, as of May 4, 2010, the Church was in arrears on its interest obligations to CMAC Funding in the amount of $285,611.11. Reliance was unable to make the interest payment due to

CMAC Funding on July 20, 2010, and interest has continued to accrue on the Bonds thereafter; and

WHEREAS, on January 26, 2010, Columbus Nova Commercial Mortgage Servicing LLC, an affiliate of CMAC Funding, commissioned CB Richard Ellis ("CBRE") to appraise the fair market value of the Property; and

WHEREAS, on February 17, 2010 CBRE issued a report indicating that as of February 15, 2010 the Property had a fair market value of $5,500,000.00, such that the Church has no equity in the Property; and

WHEREAS, on June 1, 2010, the Church commissioned an appraisal from Johnnie Ganam Appraisal Company which indicated the Property had a fair market value of $7,190,000.00; and

WHEREAS, the Church does not have sufficient net operating income from its ordinary course of business operations to make the payments due under the Bonds; and

WHEREAS, the Property is raw, heavily wooded, undeveloped land and the Church derives absolutely no income from the Property; and

WHEREAS, on or about February 25, 2010 the Church filed a lawsuit against Reliance, Church Mortgage Acceptance Co., LLC; Columbus Nova Commercial Real Estate Acquisition Group, LLC [sic]; Columbus Nova Commercial Mortgage Servicing, LLC [sic], and Commonwealth Church Finance in the Superior Court of Chatham County, Georgia entitled Calvary Baptist Temple v. Reliance Trust Company et al., Civil Action File Number SPCV1000315 (the "Lawsuit"), wherein the Church generally alleged that certain of the CMAC Parties had, among other things, improperly declared the Bonds to be in default; and

WCSR 4476853v10

WHEREAS, on or about April 6, 2010, the Church amended its Complaint in the Lawsuit to further allege that Reliance and certain of the CMAC Parties had acted in bad faith in declaring the Bonds to be in default; and

WHEREAS, Reliance and the CMAC Parties have filed answers generally denying the allegations of the Lawsuit;

WHEREAS, on April 6, 2010, the Church filed its Petition for relief under Chapter 11 in an action entitled In re Calvary Baptist Temple, Inc., United States Bankruptcy Court for the Southern District of Georgia (the "Court"), Case No. 10-40754-LWD (the "Bankruptcy Action"); and

WHEREAS, as of the date of this Agreement, the Church continues to operate and manage its business affairs in the ordinary course as a debtor-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108; and

WHEREAS, the Church has articulated a plan for development of a senior assisted living facility on a portion of the Property (the "Project"). The Project will now be developed by a new, for-profit company that the Church will incorporate pursuant to the terms of this Agreement (the "Development Entity"). The Development Entity shall be solely responsible for its success or failure; and

WHEREAS, the Church's plan for the development of the Project only requires approximately 16 unsurveyed acres, as generally depicted on Exhibit "A" attached hereto and incorporated herein by reference, which is situated in the southern portion of a tract of approximately 62.23 acres known as "Tract 4B" on plat recorded in Plat Book 38P at Page 62 in the Chatham County Records, which Tract 4B is itself situated on the eastern side of Veteran's Parkway (such 16 unsurveyed acres of Tract 4B hereinafter referred to as the "Development

Parcel"). Subdividing the Development Parcel from the Property will leave approximately 198 acres, more or less remaining in the Property (the "198 Acres"), and subdividing the Development Parcel from Tract 4B will leave approximately 46 acres remaining in Tract 4B (the "46 Acres"); and

WHEREAS, the Church has represented to Reliance and CMAC Funding that the City of Savannah (the "City") has already approved plans to extend existing water and sanitary sewer lines to the entire Property (the "Water and Sewer Extension"), with the City to reimburse the costs of said extension when the Water and Sewer Extension has been accepted by the City Engineering Department. Further, the Church has represented to Reliance and CMAC Funding that the Church has identified a construction company that is willing to undertake the Water and Sewer Extension, at an agreed upon price, and the construction company has agreed to finance the construction and bonding of the Water and Sewer Extension with little or no up front cash from the Church. Wherever this Agreement refers to the delivery of the Water and Sewer Extension to all or any portion of the Property, or any portion thereof, the Agreement shall mean to make water and sewer service available to the tracts or parcels specified by, and defined in, the Water and Sewer Agreement with the City of Savannah (the "Sewer Agreement"), as said agreement presently exists; and

WHEREAS, on or about May 27, 2010, Reliance filed a Motion for Relief From the Automatic Stay in the Bankruptcy Action, wherein it seeks authority to exercise its contractual and state law rights and remedies against the Property; and

WHEREAS, the Motion for Relief was set to come on for hearing before the Court on October 18, 2010, with notice to all parties in interest; and

WHEREAS, the Parties now seek to resolve the Lawsuit, the Motion for Relief, and certain other issues pertaining to the Bonds and the Property, on the terms and conditions set out more fully hereinbelow;

NOW, THEREFORE, in consideration of the mutual obligations and agreements set forth herein, the receipt, adequacy and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.     **Relief from the Automatic Stay As to the 198 Acres**. The Church will not further contest the relief sought in the Motion for Relief as to the 198 Acres, which excludes the Development Parcel, and will, within five (5) business days from the execution of the Agreement, execute a Consent Order (the "Consent Order") that provides, among other things, that (i) Reliance shall have relief from the automatic stay as to the 198 Acres; and (ii) should the Church default under the terms of this Agreement, then Reliance shall have relief from the automatic stay as to the Development Parcel, without further hearing or order from this Court, consistent with Paragraph 13 herein.

2.     **Effectiveness of This Agreement Contingent Upon Entry of Consent Order**. This Agreement shall be attached to the Consent Order as an Exhibit, and incorporated by reference therein. The effectiveness of this Agreement, and the enforceability of the provisions of this Agreement, shall be contingent upon the entry of a final Order from the Court that expressly authorizes the Church to (i) execute this Agreement; (ii) perform the obligations set out in this Agreement; and (iii) be bound by the terms and conditions of this Agreement.

3.     **Consent to Relief from the Automatic Stay with Regard to the Bonds**. Within fifteen (15) days from the execution of this Agreement, CMAC Funding will file with the Court a Motion for Relief From the Automatic Stay (the "Bond Relief Motion") in order to permit

CMAC Funding to proceed with a foreclosure of its security interest in the Bonds, which are currently owned by the Church, subject to the security interest of CMAC Funding under the Pledge Agreement and the Control Agreement, or any other collateral securing the CMAC Note (the "CMAC Collateral"). The Church will not oppose the Bond Relief Motion, and will execute a Consent Order (the "Bond Consent Order") consenting to the relief sought in the Bond Relief Motion within five (5) days after counsel for CMAC Funding tenders a consent order on the Bond Relief Motion to counsel for the Church.

    4.    **Survey of the Development Parcel**. Within thirty (30) days from the execution of this Agreement, the Church shall, at its own expense, commission and cause to be completed a metes and bounds survey of the Development Parcel that is reasonably acceptable to Reliance, which acceptance shall not be unreasonably withheld, and deliver same to Reliance. Costs of the survey will be reimbursed by the Development Entity to the Church.

    5.    **Subdivision of the Development Parcel and Delineation of Easements**. Within thirty (30) days after the execution of this Agreement, the Church shall, at its sole cost and expense, cause the Development Parcel to be subdivided of record from Tract 4B in accordance with all applicable laws, ordinances, rules and regulations. The subdivision of the Development Parcel, and any resulting amended survey, shall provide for easements for (a) vehicular and pedestrian access, ingress, egress and regress, as well as for construction, use, maintenance, repair and replacement of driveway and walkway improvements for such purposes, and (b) the installation, use, maintenance, repair and replacement of all necessary utilities, including, without limitation, water, sewer, electricity, natural gas and telephone and other telecommunications, on, over, across and under the Development Parcel for the benefit of the 46 Acres remaining of Tract 4B.

6. **Credited Amounts on Account of Transfer of the 198 Acres**. Upon a foreclosure by Reliance of its security interest in the 198 Acres, or upon a conveyance of the Property to Reliance through Deed in Lieu of Foreclosure if Reliance, in its sole and absolute discretion, deems a Deed in Lieu of Foreclosure to be feasible and appropriate, the total balance due to Reliance, as Trustee under the Bonds, shall be reduced to $500,000 (the "Remaining Balance"). Reliance shall not be required to seek confirmation of any foreclosure sale of the 198 Acres pursuant to O.C.G.A. § 44-14-161, *et seq.* (a "Confirmation Proceeding") in order to maintain and receive the Remaining Balance, and the Church herewith releases, waives and forever quitclaims any rights that it might have to insist upon a Confirmation Proceeding as a prerequisite for maintaining or receiving the Remaining Balance due. If, however, Reliance, acting in its sole and absolute discretion, determines that it is appropriate to commence and prosecute a Confirmation Proceeding, Reliance may do so. In the event that Reliance pursues a Confirmation Proceeding, the Church shall not contest such Confirmation Proceeding, and herewith releases and waives any right to do so. Regardless of the results of any Confirmation Proceeding that Reliance may pursue, the Remaining Balance shall be reduced to, and deemed liquidated at, the amount of $500,000.00. The Remaining Balance will continue to accrue interest at the rate of ten percent (10%) per annum until the Remaining Balance has been paid in full by the Development Entity, or until such time as Reliance's interest in the Development Entity has been converted in accordance with the provisions of Paragraph 11(i) hereinbelow. Unless and until the Church can confirm a Plan of Reorganization consistent with the other provisions of this Agreement, the Remaining Balance shall be secured by Reliance's security interest in and to the Development Parcel.

WCSR 4476853v10

7.    **Dismissal of the Lawsuit.**  Within five (5) business following the entry of the Consent Order, or such other order under Bankruptcy Rule 9019 as the Court may deem to be necessary in order to authorize the Church to execute this Agreement, the Church shall dismiss all claims that could have been asserted in the Lawsuit as to the Parties to this Agreement, with prejudice.

8.    **Initiation of Administrative Efforts to Obtain Water and Sewer Service to the Property.**  Following the entry of the Consent Order, or such other order under Bankruptcy Rule 9019 as the Court may deem to be necessary in order to authorize the Church to execute this Agreement, the Church shall promptly commence and prosecute the actions necessary to allow the process for the installation of the Water and Sewer Extension to proceed, including, but not limited to:

- Within sixty (60) days following the entry of the Consent Order, or such other order under Bankruptcy Rule 9019 as the Court may deem to be necessary in order to authorize the Church to execute this Agreement, the Church, or should the Church assign its rights to the Development Entity, the Development Entity, as appropriate, shall execute a contractually binding agreement with the City wherein the City (i) approves the terms and conditions under which the Water and Sewer Extension shall be constructed, and (ii) commits to reimburse the Church or the Development Entity, as appropriate, for the costs of the installation of the Water and Sewer Extension;

- Within sixty (60) days following the entry of the Consent Order, or such other order under Bankruptcy Rule 9019 as the Court may deem to be necessary in order to authorize the Church to execute this Agreement, the Church or the

Development Entity, as appropriate, shall execute a contractually binding agreement with a site/civil engineer to be chosen by the Church or the Development Entity, as appropriate, for the performance of all engineering work necessary to proceed with the Water and Sewer Extension;

- Within one hundred and twenty (120) days following the entry of the Consent Order, or such other order under Bankruptcy Rule 9019 as the Court may deem to be necessary in order to authorize the Church to execute this Agreement, the Church or the Development Entity, as appropriate, shall complete the design phase of the Water and Sewer Extension, and submit the completed design to the City in order to obtain the required permits for the installation of the Water and Sewer Extension; and

- Within one hundred and eighty (180) days following the entry of the Consent Order, or such other order under Bankruptcy Rule 9019 as the Court may deem to be necessary in order to authorize the Church to execute this Agreement, the City shall have issued permits that authorize the Church or the Development Authority, as appropriate, to commence the installation of the Water and Sewer Extension.

To the extent that any of the contracts, agreements or permits referenced in the foregoing paragraph are executed by, or issued in the name of, the Church, then the Church agrees and warrants that it will voluntarily assign any such agreement or permit to the Development Entity when and if appropriate in order to allow the development of the Project to proceed unimpeded.

9.      **Incorporation of the Development Entity to Own the Development Parcel**. Within thirty (30) business days following the entry of the Consent Order, or such other order under Bankruptcy Rule 9019 as the Court may later deem to be necessary in order to authorize

the Church to execute this Agreement, the Church shall incorporate or organize the Development Entity, which shall be a for-profit entity, with a corporate structure consistent with the intent and purposes of this Agreement, that will ultimately own the Development Parcel and oversee the construction of the Project on the Development Parcel. The Project will be constructed in general accordance with the Marketing Study commissioned by the Church or its affiliates, which is attached hereto as Exhibit "B."

10.    **Filing of a Plan of Reorganization**. Within sixty (60) business days following the entry of the Consent Order, or such other order under Bankruptcy Rule 9019 as the Court may later deem to be necessary in order to authorize the Church to execute this Agreement, the Church shall file a Disclosure Statement and Plan of Reorganization (the "Plan") that contains the provisions set forth in Paragraph 11 hereinbelow.

11.    **Terms and Conditions of the Plan of Reorganization.** The Plan that the Church files in the Bankruptcy Action in accordance with Paragraph 10 hereinabove shall contain, at a minimum, the following provisions:

        (a)    The Church will, within thirty (30) business days after the date on which the Plan becomes effective (the "Effective Date"), convey the Development Parcel to the Development Entity free and clear of all liens, claims and encumbrances other than i) the lien that Reliance will release pursuant to Paragraph 12 of this Agreement; and ii) the easements described in Paragraph 5 of this Agreement for the benefit of the 46 Acres.

        (b)    The Church will, within thirty (30) business days after the Effective Date, and in any event prior to the conveyance of the Development Parcel to the Development Entity, convey to Reliance or its Designee the easements

referenced in Paragraph 5 of this Agreement, which easements shall be granted by the Church to Reliance or its Designee pursuant to a recordable easement agreement reasonably acceptable to Reliance or its Designee.

(c)     Reliance will release its security interest in the Development Parcel as provided in Paragraph 12 hereinabove, and within ten (10) business days after the conveyance of the Development Parcel pursuant to subparagraph (a) the Series II Bondholders will release their security interest in the Development Parcel of record.

(d)     As of the Effective Date of the Plan, and on account of the release of their respective security interests in the Development Parcel, (i) Reliance or its Designee (as defined below) will receive voting preferred shares of the Development Entity that will equal 15% of the outstanding shares of the Development Entity; and (ii) the Series II Bondholders will cumulatively receive voting common shares of the Development Entity that equal 85% of the outstanding shares of the Development Entity. The receipt by the Series II Bondholders of the voting common shares of the Development Entity pursuant to the Plan shall satisfy and discharge in whole all claims of the Series II Bondholders against the Church. Reliance shall have the absolute right to review and approve the content and form of the documents associated with the issuance of these shares and the rights attendant with these shares.

(e)     The preferred return on Reliance's shares will be equal to the Remaining Balance plus interest on the Remaining Balance, accruing at ten percent

(10%) per annum from the Effective Date. Reliance's shares will have the preferred right to receive a priority distribution from the first distributable income from the operation, ownership, sale or refinance of the Project equal to the $500,000.00 Remaining Balance, plus all interest that has accrued on the Remaining Balance since the Effective Date.

(f) Consistent with Paragraph 8 herein, the Development Entity will take all steps as may be necessary and appropriate after the Effective Date to deliver the Water and Sewer Extension to all portions of the Property, including the Development Parcel and the 198 Acres in accordance with, and as defined in, the Water and Sewer Agreement. The Development Entity will complete construction of the Water and Sewer Extension within thirty (30) months from the Effective Date.

(g) The Church will do nothing to impede the progress of the Development Entity in completing the Water and Sewer Extension and the design, construction and operation of the Project, which must complete the construction of the Project, and have a final and unconditional Certificate of Occupancy issued such that the Project can receive residents, within thirty (30) months from the Effective Date.

(h) Within thirty (30) months from the Effective Date, the Development Entity will pay to Reliance or its Designee the $500,000.00 Remaining Balance due, plus all accrued interest. Upon receipt of full payment of the Remaining Balance and all interest accrued thereon, Reliance or its Designee will release all of its interest in the Development Entity.

Reliance or its Designee may, in its sole and absolute discretion, elect to retain its 15% preferred interest in the Development Entity in lieu of repayment of the Remaining Balance and the interest accrued thereon.

(i) If for any reason the Development Entity does not complete the requirements set forth in subparagraphs (f), (g) and (h) within thirty (30) months from the Effective Date, then the Development Entity shall, without further request from Reliance or its Designee or the entry of any additional order from the Court, convert the shares evidencing Reliance's preferred 15% interest in the Development Entity to an 85% preferred interest in the Development Entity, and convert the shares evidencing the 85% common interest in the Development Entity held by the Series II Bondholders to a 15% common interest in the Development Entity, without the necessity for execution of conversion documents or other consents from the Series II Bondholders.

12. **Effect of Confirmation of the Plan and Release of Lien**. Upon the occurrence of each of (i) the transfer of the 198 Acres to Reliance in accordance with Paragraph 1 of this Agreement (ii) the conveyance of the Development Parcel in accordance with Paragraph 11(a) and the grant of the easement in accordance with Paragraph 11(b); and (iii) the Effective Date, Reliance will release its lien against the Development Parcel and all other property of the Church, and Reliance's sole means of recovery on the Remaining Balance will be Reliance's interest in the Development Entity.

13. **Effect of Failure to Timely Consummate the Terms and Obligations Set forth In This Agreement**. Should the Church (i) fail to meet any of the deadlines imposed under

Paragraphs 1, 3, 4, 5, 7, 8, 9, 10 and 11 hereinabove, time being of the essence to the performance by the Church of such obligations; or (ii) contest the Bond Relief Motion; or (iii) should the Plan not contain the provisions required by Paragraph 11 hereinabove; or (iv) should the Church not prosecute confirmation of the Plan, and obtain an order confirming a Plan that contains, at a minimum, the provisions set forth in Paragraph 11 hereinabove within ninety (90) days from the approval of the Disclosure Statement, then, in any of these events, Reliance shall have relief from the automatic stay as to the Development Parcel, without the need for further hearing before the Court, and the Church herewith releases, waives and forever quitclaims any objections that it may have to the issuance of relief from the stay with regard to the Development Parcel, other than objections that go to the substance of whether the Church has in fact defaulted on these provisions. In such case, upon receipt by Reliance or its Designee of title to the Development Parcel through a separate and duly conducted foreclosure sale that shall require no further hearing from the Court, and shall follow, and be in addition to, the foreclosure sale of the 198 Acres contemplated in Paragraph 1, the Parties to this Agreement will have no further recourse against the Church.

      14.    **Waiver of Objection to Multiple Foreclosure Sales.**  To the extent that the Security Deed and the Trust Indenture do not expressly provide for multiple, separate foreclosure sales of the 198 Acres and the Development Parcel, the Church herewith expressly authorizes Reliance to conduct multiple and separate foreclosure sales of the 198 Acres and the Development Parcel under the powers of sale set forth in the Trust Indenture and the Security Deed, and waives any rights to contest or otherwise object to multiple and separate foreclosure sales of the 198 Acres and the Development Parcel. To the extent necessary, in the sole

discretion of Reliance or its Designee, the Church will execute such modified or amended security deeds or other documents that expressly authorize separate, multiple foreclosure sales.

15. **Right of Reliance or CMAC Funding to Assign.** Reliance shall have the right, in its sole and absolute discretion, to assign its rights under this Agreement or under the Plan to a designee or assignee as required by, or in accordance with, the Trust Indenture, the Pledge Agreement and the Control Agreement (or "Designee"). Similarly, and notwithstanding any provision of this Agreement to the contrary, CMAC Funding reserves the right, in its sole and absolute discretion, to assign its rights under this Agreement or under the Plan to KeyBank (defined in paragraph 18(b) of this Agreement) or to any other party as directed and designated by KeyBank pursuant to the Note Purchase Agreement (defined in paragraph 18(b)) and consistent with CMAC Funding's obligations under the Note Purchase Agreement and any other documents executed in connection with the Note Purchase Agreement. If CMAC Funding becomes a Designee, CMAC Funding's assignment right shall be limited by the terms of the Note Purchase Agreement and all documents executed in connection with the Note Purchase Agreement.

16. **Representations and Warranties of the Church.**

    (a)    The Church represents and warrants that it has full legal right, power and authority to enter into this Agreement and to consummate the transactions contemplated hereby, and that this Agreement is a legal and binding agreement, enforceable against the Church in accordance with its terms.

    (b)    The Church represents and warrants that it will use its best efforts to consummate the transactions, actions and duties contemplated by this Agreement.

(c)     The Church specifically represents and warrants that it has not assigned, pledged, hypothecated, encumbered or transferred, nor purported to have assigned, pledged, hypothecated, encumbered or transferred any alleged claims against Reliance or the CMAC Parties, or any one of them, that it will release under the terms of this Agreement.

(d)     The Church specifically represents and warrants that the City has already approved plans for the Water and Sewer Extension, with the City to the reimburse costs of the Water and Sewer Extension when the Water and Sewer Extension has been appropriately completed.

(e)     The Church specifically represents and warrants that the Church has identified a construction company that will undertake the construction of the Water and Sewer Extension, at an agreed upon price, and finance the construction with little or no up front cash from the Church.

(f)     The Church represents and warrants that all of the representations set forth hereinabove regarding the Trust Indenture, the Security Deed, the Property, the Lawsuit, the Bankruptcy and the circumstances surrounding the Bonds and the Parties are all accurate, true and correct.

The Church understands and agrees that the truth and accuracy of the representations and warranties that it is making herein are material, and are being relied upon by Reliance and the CMAC Parties in their execution of this Agreement.

17.     **Representations and Warranties of Reliance.** Reliance, as Trustee, represents and warrants that it has full legal right, power and authority to enter into this Agreement and to

consummate the transactions contemplated hereby, and that this Agreement is a legal and binding agreement, enforceable against Reliance, as Trustee, in accordance with its terms.

18. **Representations of the CMAC Parties.** The CMAC Parties, and each of them, represent and warrant as follows:

(a) that each of them has full legal right, power and authority to enter into this Agreement and to consummate the transactions contemplated hereby, and that this Agreement is a legal and binding agreement, enforceable against each of the CMAC Parties in accordance with its terms;

(b) that, other than pursuant to an Allonge to the CMAC Note and assignments of the other loan documents related to the CMAC Note, including, without limitation, the Pledge Agreement and the Control Agreement, executed and delivered by CMAC Funding pursuant to that certain Amended and Restated Note Purchase Agreement dated as of May 23, 2008, as amended by (i) that certain Amendment to Amended and Restated Note Purchase Agreement dated as of December 31, 2008, (ii) that certain Second Amendment to Amended and Restated Note Purchase Agreement and Amendment to Servicing Agreement dated September 24, 2009, and (iii) that certain Third Amendment to Amended and Restated Note Purchase Agreement and Amendment to Servicing Agreement dated as of June 30, 2010, among CMAC Funding, KeyBank National Association, a national banking association ("KeyBank"), as successor-in-interest to Public Square Finance, LLC, a Delaware limited liability company ("PSF", and KeyBank, in its capacity as successor-in-

interest to PSF, the "Investor") and KeyBank, as agent for the Investor (as amended, the "Note Purchase Agreement"), CMAC Funding has not conveyed its beneficial interest in the Bonds to any other person or entity, and still owns a beneficial interest in all of the Bonds, including, but not limited to, the right to direct Reliance to take action with regard to the Bonds;

(c)     that CMAC Funding has obtained authorization from KeyBank and the Investor to execute this Agreement, and has consented to the terms and conditions of this Agreement, based upon the consent of KeyBank and the Investor to the terms of this Agreement; and

(d)     that CMAC Funding has directed, and does herewith authorize, Reliance to enter into, consummate and fully carry out the terms of this Agreement, regardless of whether the terms and provisions of this Agreement are fully authorized under the Trust Indenture or the Control Agreement.

19.     **No Other Representations**.  Other than the representations and warranties set forth herein, the Parties acknowledge that no representations of fact or opinion have been made by any other Party, or anyone acting on their behalf, to induce this compromise with respect to the nature of the damages or issues of liability.

20.     **Mutual General Releases**.

(a)     **Releases by the Church**.  Except for the obligations of Reliance and the CMAC Parties pursuant to this Agreement and the Plan, as confirmed, upon (i) the execution of this Agreement by the Church, and (ii) the approval of this Agreement by the Court under the Consent Order, or such

other order as the Court may deem necessary, the Church, on behalf of itself and its members, employees, officers, directors, agents, affiliates, parents, subsidiaries, attorneys, representatives, successors and assigns, does fully and finally release and discharge Reliance and each of the CMAC Parties, as defined hereinabove, as well as all of their respective shareholders, officers, directors, agents, affiliates, parents, subsidiaries, successors, assigns, attorneys, and representatives, from any and all claims, actions, causes of action, suits, debts, accounts, covenants, contracts, liabilities, agreements, promises, damages, expenses and demands whatsoever, at law or in equity, known or unknown, that the Church has, or claims to have, or had, or claimed to have, from the beginning of time, including, without limiting the generality of the foregoing, all claims that arise out of the Lawsuit, the Trust Indenture, the Bonds, the CMAC Note, the Pledge Agreement, the Control Agreement, the Property or the administration thereof by Reliance and each of the CMAC Parties.

(b)     <u>Releases by Reliance and the CMAC Defendants</u>.  Save and except for obligations of the Church pursuant to the Trust Indenture, this Agreement, and any other obligations that will be imposed by this Agreement and the Plan, as confirmed, upon (i) the execution of this Agreement by the Church; (ii) the approval of this Agreement by the Bankruptcy Court; (iii) the entry of the Consent Order described in Paragraph 1 (and other paragraphs) of this Agreement, and the entry of the Bond Consent Order

pursuant to Paragraph 3 hereinabove; (iv) the timely dismissal by the Church of the Lawsuit as to the Parties to this Agreement, with prejudice; (v) the timely tender of the completed survey of the Development Parcel; (vi) the timely completion of the subdivision of the Development Parcel and the conveyance of easements as described in this Agreement; (vii) the timely completion of the administrative actions necessary to commence the construction of the Water and Sewer Extension; (viii) the timely incorporation or organization of the Development Entity; and (ix) the timely filing of the Plan. Reliance and each of the CMAC Parties, on behalf of themselves and their respective shareholders, officers, directors, agents, affiliates, parents, subsidiaries, successors, assigns, attorneys, and representatives, shall then release and discharge the Church, as well as its members, shareholders, agents, employees, directors, officers, parents, affiliates, subsidiaries, representatives, attorneys, successors and assigns, from any and all claims, causes of action, suits, debts, accounts, covenants, contracts, liabilities, agreements, promises, damages, expenses and demands whatsoever, at law or in equity, known or unknown, that Reliance or the CMAC Parties, or any one of them, have, or claim to have, or had, or claimed to have against the Church that arise out of the Lawsuit, the Bonds, the CMAC Note, the Pledge Agreement, the Control Agreement, or the Church's actions with regard to the Bonds, the Property or the Lawsuit.

(c)    It is the intention of each of the Parties that no claims have been intentionally or unintentionally omitted from these releases, except those claims that arise under, or go to the enforcement of this Agreement, the Trust Indenture as it survives under this Agreement, and the Plan, as confirmed.

(d)    Notwithstanding the foregoing, this release paragraph does not release any of the Parties from the terms, provisions, obligations or conditions of this Agreement, the Trust Indenture as it survives under this Agreement, the Pledge Agreement as it survives under this Agreement, or the Plan, which terms, provisions, obligations and conditions are specifically excepted from the release provisions. In any event, nothing in this Agreement is, or shall be construed to be, a release or discharge of any of the rights or claims of Reliance, CMAC or their respective designees to foreclose upon the 198 acres, the Development Parcel, the CMAC Collateral, or any other portion of the Property in accordance with this Agreement.

21.    **Reliance Acting in Its Capacity as Trustee**. Each of the Parties hereto acknowledge the Reliance is executing this Agreement, and performing the terms and conditions of this Agreement, as Trustee for the Series 2007-1 Bonds, and not in its corporate capacity. Reliance is not, and shall not be deemed to be, responsible for any obligations or duties greater than, or more expansive than, the rights, obligations and duties imposed upon Reliance as Trustee under the Trust Indenture and under the Control Agreement.

22.    **Agreement to Further Prosecute Court Approval**. If the Bankruptcy Court for any reason declines to authorize the Church to enter into this Agreement pursuant to the terms of

the Consent Order that is entered in connection with the Motion for Relief, as contemplated in Paragraph 1, the Church agrees, within five (5) days from the receipt of any such decision from the Court, to file a Motion to approve and authorize the Church's execution of this Agreement pursuant to Bankruptcy Rule of Procedure 9019, and to set and prosecute a hearing on said Motion and the entry of an Order authorizing the Church to (i) enter into this Agreement, and (ii) fully consummate all of the terms and conditions of this Agreement as soon as possible.

23.     **Non-Waiver**.  The failure or forbearance by any Party to exercise any right or action granted by the terms of this Agreement shall not affect or release any other Party's liability or obligation, and shall not constitute a waiver of any such rights.

24.     **Entire Agreement**.  This Agreement shall be complete and final in all respects. This instrument shall constitute the entire Agreement between the Parties hereto, and supersedes any and all prior agreements.  Except as herein provided, there are no promises, warranties, representations or other agreements between the Parties in connection with the subject matter hereof.  No supplement, modification, waiver or termination of this Agreement shall be binding unless executed in writing by each of the Parties hereto.

25.     **Governing Laws**.  This Agreement shall be construed in accordance with, and governed by, the laws of the State of Georgia, without regard to its conflicts of law rules.

26.     **Interpretation, Arbitration, and Advice of Counsel**.  The Parties agree that this Agreement is the result of negotiations between all of the Parties hereto, and that this Agreement has been jointly drafted with the input, consent and advice of counsel for all Parties. Consequently, no presumption shall arise for or against any Party in the interpretation of this document on the basis that such Party was the draftsman of this Agreement.  EACH PARTY HERETO CERTIFIES TO EACH OTHER THAT THEY HAVE CAREFULLY READ

WCSR 4476853v10

ALL OF THE PROVISIONS CONTAINED HEREIN, THEY HAVE CONSULTED WITH LEGAL COUNSEL OF THEIR CHOOSING, HAVE HAD AN OPPORTUNITY TO DO SO, AND THAT THEY (I) HAVE VOLUNTARILY AND WILLINGLY SIGNED THIS AGREEMENT WITH THE UNDERSTANDING THAT IT WILL BE FINAL AND BINDING AS TO THEIR INTERESTS, AND (II) HAVE HAD SUFFICIENT OPPORTUNITY TO REVIEW THE AGREEMENT AND CONSULT WITH COUNSEL OF THEIR CHOICE. THE PARTIES HEREBY REPRESENT AND WARRANT THAT THIS AGREEMENT IS EXECUTED WITHOUT RELIANCE ON ANY STATEMENT OR REPRESENTATION, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, AND THAT THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO. NO PROMISE, INDUCEMENT OR CONSIDERATION, OTHER THAN AS EXPRESSED IN THE WITHIN AND FOREGOING AGREEMENT, HAS BEEN OFFERED OR ACCEPTED.

27. **Survival**. The representations, warranties, covenants and agreements of the Parties contained in this Agreement, or in any writing delivered pursuant to the provisions of this Agreement, shall survive the execution of this Agreement and the consummation of the transactions contemplated hereby.

28. **Binding Effect**. All of the terms, covenants, agreements and conditions contained herein shall be binding upon, and shall inure to, the benefit of the Parties hereto and their respective heirs, legatees, executors, administrators, representatives, agents, successors, and permitted assigns.

29.     **Waiver of Breach**.  The waiver by any Party of a breach of any portion of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach.

30.     **Severability**.  This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations.  If any provisions of this Agreement, or the application thereof to any person, firm, corporation or other legal entity or circumstance shall, for any reason and to any extent, be invalid and unenforceable, the remainder of this Agreement and the application of said provision to other persons, firms, corporations or other entities or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

31.     **Duplicate Originals**.  Original signatures from each of the Parties provided to the other Parties shall be sufficient to cause this Agreement to be legally binding even if all such signatures do not appear on one complete original of the Agreement.

IN WITNESS THEREOF, the undersigned Parties have hereto set their respective hand and seal as of the day and year first written above.

Sworn to and subscribed before me this _____ day of _December_ 2010.

_____
Notary Public

My commission expires: _March 8, 2014_

**RELIANCE TRUST COMPANY**

By: _____
Its: _SR. VICE PRESIDENT_

Sworn to and subscribed before me this _10th_ day of _January_, ~~2010~~ 2011.

_Melissa J. Zaiser_
Notary Public

My commission expires:

**CALVARY BAPTIST TEMPLE, INC.**

By: _____
Its: _PRESIDENT_

Sworn to and subscribed before me this _____ day of _____ 2010.

_____
Notary Public

My commission expires:

_____ FUNDING I LLC

By: _____
Its: _____

*[Signatures of the Parties continue on the following pages]*

WCSR 4476853v10

**IN WITNESS THEREOF,** the undersigned Parties have hereto set their respective hand
and seal as of the day and year first written above.

RELIANCE TRUST COMPANY

Sworn to and subscribed before me
this _____ day of _____, 2010.

By: _____
Its: _____

_____
Notary Public

My commission expires:

CALVARY BAPTIST TEMPLE, INC.

Sworn to and subscribed before me
this _10th_ day of _January_, 2010 _2011_

By: _James G. Stahl_
Its: _PRESIDENT_

_Melissa J. Zaiser_
Notary Public

My commission expires:

MELISSA J. ZAISER
NOTARY PUBLIC
My Comm. Exp.
June 21, 2014
CHATHAM COUNTY, GA

CMAC FUNDING I LLC
By: Columbus Nova Commercial Mortgage
Servicing LLC, its Manager

Sworn to and subscribed before me
this _29th_ day of _December_, 2010.

By: _____
Its: _Managing Director_

_Concetta Cotugno_
Notary Public _Concetta Cotugno_

My commission expires:   _4/16/11_

CONCETTA COTUGNO
NOTARY
PUBLIC
MECKLENBURG COUNTY, N.C.

*[Signatures of the Parties continue on the following pages]*

Page 29 of 30

WCSR 4476853v10

**CHURCH MORTGAGE ACCEPTANCE CO., LLC**
By: Columbus Nova Commercial Mortgage Servicing LLC, its authorized agent

By: _____

Its: _____Managing Director_____

Sworn to and subscribed before me this 27th day of December, 2010.

_____
Notary Public  CONCETTA COTUGNO

My commission expires: 4/16/11

[Notary seal: CONCETTA COTUGNO, NOTARY PUBLIC, MECKLENBURG COUNTY, N.C.]

**COLUMBUS NOVA COMMERCIAL REAL ESTATE ACQUISITIONS GROUP LLC**

By: _____

Its: _____Managing Director_____

Sworn to and subscribed before me this 27th day of December, 2010.

_____
Notary Public  CONCETTA COTUGNO

My commission expires: 4/16/11

[Notary seal: CONCETTA COTUGNO, NOTARY PUBLIC, MECKLENBURG COUNTY, N.C.]

**COLUMBUS NOVA COMMERCIAL MORTGAGE SERVICING LLC**

By: _____

Its: _____Managing Director_____

Sworn to and subscribed before me this 27th day of December 2010.

_____
Notary Public  CONCETTA COTUGNO

My commission expires: 4/16/11

[Notary seal: CONCETTA COTUGNO, NOTARY PUBLIC, MECKLENBURG COUNTY, N.C.]

WCSR 4476853v10

Case: 10-40754-JSD    Doc#:115-1    Filed:01/18/11    Page:32 of 36



EXHIBIT A

Oak Lake Senior Living                                                                                 Table II

| | | Annual | % of GPI | Per bed | Bed per month |
|---|---|---|---|---|---|
| **Independent living** | | | | 24 | |
| Gross potential income | $ | 669,600 | 1.000 | | |
| Less: | Vacancy allowance* | 41,515 | 0.062 | | |
| Effective gross income | $ | 628,085 | 0.938 | 26,170 | 2,181 |
| Less: | Amenities | 219,830 | 0.350 | 9,160 | 763 |
| | Management | 62,808 | 0.100 | 2,617 | 218 |
| Total operating expenses | $ | 282,638 | 0.450 | 11,777 | 981 |
| Net rental income | $ | 345,447 | 0.516 | 14,394 | 1,199 |
| | | | | | |
| **Assisted living** | | | | 50 | |
| Gross potential income | $ | 1,771,200 | 1.000 | | |
| Less: | Vacancy allowance* | 74,390 | 0.042 | | |
| Effective gross income | $ | 1,696,810 | 0.958 | 33,936 | 2,828 |
| Less: | Amenities | 678,724 | 0.400 | 13,574 | 1,131 |
| | Management | 254,521 | 0.150 | 5,090 | 424 |
| Total operating expenses | $ | 933,245 | 0.550 | 18,665 | 1,555 |
| Net rental income | $ | 763,564 | 0.431 | 15,271 | 1,273 |
| | | | | | |
| **Memory care** | | | | 24 | |
| Gross potential income | $ | 1,368,000 | 1.000 | | |
| Less: | Vacancy allowance* | 116,280 | 0.085 | | |
| Effective gross income | $ | 1,251,720 | 0.915 | 52,155 | 4,346 |
| Less: | Amenities | 625,860 | 0.500 | 26,078 | 2,173 |
| | Management | 187,758 | 0.150 | 7,823 | 652 |
| Total operating expenses | $ | 813,618 | 0.650 | 33,901 | 2,825 |
| Net rental income | $ | 438,102 | 0.320 | 18,254 | 1,521 |

* Based on November 2009 VI&G Market Study

**Summary**

| | | For profit | | Tax exempt | Variance |
|---|---|---|---|---|---|
| Net rental income | $ | 1,547,113 | $ | 1,547,113 | |
| Less: | Utilities | 195,000 | | 195,000 | |
| | Property insurance | 98,000 | | 98,000 | |
| | Property tax | 135,000 | | - | (135,000) |
| | Maintenance & repair | 98,000 | | 98,000 | |
| | Replacement reserve | 34,000 | | 34,000 | |
| Net income (loss) | $ | 987,113 | $ | 1,122,113 | 135,000 |
| | Capitilization rate | 0.11 | | 0.11 | |
| Modified income approach value | $ | 8,973,754 | $ | 10,201,027 | 1,227,273 |
| | Assessment Rate | 0.400 | | | |
| Assessed Value | | 3,589,502 | | | |
| | Divided by | 1,000.000 | | | |
| Sub-Total | | 3,590 | | | |
| | Millage Rate - City/County | 37.5110 | | | |
| Property Tax | $ | 134,645.80 | | | |
| | Monthly | $ | 11,220.48 | | | |

The financial projection above is based on a variety of estimates and assumptions that, though considered reasonable,

are inherently subject to significant business, economic, regulatory and competitive uncertainties, many of which are beyond control and subject to change.

Coastal Capital Advisors, Inc.
mark@ccasav.com
912.257.3412

September 5, 2010

Oak Lake Senior Living                                                                                      Table I

|  | No. of units | Unit Unit size (SF) | *Monthly Rent per unit | Gross Monthly rent | Gross Annual rent | PSF |
|---|---|---|---|---|---|---|
| **Independent living** | | | | | | |
| Studio | 6.00 | 600.00 | 1,850.00 | 11,100.00 | 133,200.00 | 37.00 |
| One bedroom | 12.00 | 820.00 | 2,250.00 | 27,000.00 | 324,000.00 | 32.93 |
| Two bedroom | 6.00 | 1,160.00 | 2,950.00 | 17,700.00 | 212,400.00 | 30.52 |
| **Gross Potential Income** | 24.00 | 20,400.00 | | 55,800.00 | 669,600.00 | 32.82 |
| **Assisted living** | | | | | | |
| Studio | 8.00 | 600.00 | 2,600.00 | 20,800.00 | 249,600.00 | 52.00 |
| One bedroom | 34.00 | 820.00 | 2,900.00 | 98,600.00 | 1,183,200.00 | 42.44 |
| Two bedroom | 8.00 | 1,160.00 | 3,525.00 | 28,200.00 | 338,400.00 | 36.47 |
| **Gross Potential Income** | 50.00 | 32,744.00 | | 147,600.00 | 1,771,200.00 | 54.09 |
| **Memory care** | | | | | | |
| Studio | 24.00 | 420.00 | 4,750.00 | 114,000.00 | 1,368,000.00 | 135.71 |
| **Gross Potential Income** | 24.00 | 10,080.00 | | 114,000.00 | 1,368,000.00 | 135.71 |

*Based on November 2009 VI&G Market Study*

| Summary | | | | | | |
|---|---|---|---|---|---|---|
| Independent living | 24.00 | 20,400.00 | | 55,800.00 | 669,600.00 | |
| Assisted living | 50.00 | 32,744.00 | | 147,600.00 | 1,771,200.00 | |
| Memory care | 24.00 | 10,080.00 | | 114,000.00 | 1,368,000.00 | |
|  | 98.00 | 63,224.00 | | 317,400.00 | 3,808,800.00 | |
| Common area / amenity allocation | 0.25 | 15,806.00 | | | | |
| **Total** | | 79,030.00 | | | | 48.19 |

The financial projection above is based on a variety of estimates and assumptions that, though considered reasonable,
are inherently subject to significant business, economic, regulatory and competitive uncertainties, many of which are beyond control and subject to change.

Coastal Capital Advisors, Inc.
mark@ccasav.com
912.257.3412

September 5, 2010

Oak Lake Senior Living

Table III

| | | | PSF | | Total | | Per bed |
|---|---|---|---|---|---|---|---|
| Net income (loss) | 987,113 | | | | | | |
| No. of beds | 98 | | | | | | |
| No. of buildings | 1 | | | | | | |
| Total vertical square feet | | | | | | | |
| Living area | 63,224 | $ | 72.00 | | 4,552,128 | | 46,450 |
| Common and amenity area | 15,806 | $ | 38.00 | | 600,628 | | 6,129 |
| Gross vertical area | 79,030 | $ | 65.20 | $ | 5,152,756 | $ | 52,579 |
| Density allowed per acre | 6.00 | | | | | | |
| Vertical area - acres | 1.81 | | | | | | |
| Parking space required per unit | 1.50 | | | | | | |
| Total parking space required | 177.80 | | | | | | |
| Average parking space size | 260.00 | | | | | | |
| Gross parking spaces | 46,228 | | | | | | |
| Common area/right-of way allocation | 6,934 | | | | | | |
| Total parking area (square feet) | 53,162 | | | | | | |
| Total parking area (acres) | 1.22 | | | | | | |
| Access roads - ingress/egress (acres) | 1.00 | | | | | | |
| Total impact area (acres) | 4.03 | | | | | | |
| No. of acres required to meet zoning density | 16.33 | | | | | | |
| No. of acres not directly impacted | 12.30 | | | | | | |
| Acquisition cost per acre | 45,500 | | | | | | |
| Total acquisition cost | 743,167 | | 9.40 | | 743,167 | | 7,583 |
| Horizontal cost | 5,000 | | 6.20 | | 490,000 | | 5,000 |
| Infrastructure cost | 25,000 | | 1.28 | | 100,868 | | 1,029 |
| Soft cost | 6% | | 4.36 | | 344,617 | | 3,517 |
| Project administration (to master builder) | 10% | | 7.70 | | 608,824 | | 6,212 |
| Total acquisition & development cost | | $ | 94.14 | $ | 7,440,232 | $ | 75,921 |

The financial projection above is based on a variety of estimates and assumptions that, though considered reasonable,
are inherently subject to significant business, economic, regulatory and competitive uncertainties, many of which are beyond control and subject to change.

Coastal Capital Advisors, Inc.
mark@ccasav.com
912.257.3412

September 5, 2010

Oak Lake Senior Living

Table IV

| Fiscal period | PROJECT BUDGET | Construction & Lease-Up | | Stabilization | 3% CPI Increase Annually | | | | PROJECT BUDGET |
|---|---|---|---|---|---|---|---|---|---|
| | | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 12/31/2016 | 12/31/2017 | |
| Land lease - 11 acres @ 500,000 x 12% | | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 434,000 |
| Net income (loss) after taxes, insurance, utilities | | - | 493,556 | 997,113 | 1,016,726 | 1,047,228 | 1,078,645 | 1,111,004 | 5,734,273 |
| Operational sources of cash | | 62,000 | 555,556 | 1,049,113 | 1,078,726 | 1,109,228 | 1,140,645 | 1,173,604 | 6,168,273 |
| Capitalization rate | | | | 0.11 | 0.11 | 0.11 | 0.11 | 0.11 | |
| Gross property sale | | | | 9,537,391 | 9,806,603 | 10,083,892 | 10,369,500 | 10,668,676 | |
| Sales expense | | | | 476,870 | 490,330 | 504,195 | 518,475 | 533,184 | |
| Net property sale | | | | 9,060,521 | 9,316,273 | 9,579,698 | 9,851,025 | 10,130,492 | |
| Less: | | | | | | | | | |
| Acquisition & development cost | 7,640,232 | 5,580,174 | 1,060,058 | - | - | - | - | - | 7,640,232 |
| FF&E | 400,000 | - | 400,000 | - | - | - | - | - | 400,000 |
| Management/construction period taxes/audit | 152,250 | 75,000 | 77,250 | 79,568 | 81,955 | 84,413 | 86,946 | 89,254 | 574,635 |
| Interest | 642,000 | 229,500 | 412,500 | 447,495 | 441,814 | 435,783 | 429,380 | 422,582 | 2,819,054 |
| Operational uses of cash | 8,634,482 | 5,884,674 | 2,749,808 | 517,063 | 523,769 | 520,196 | 516,326 | 512,136 | 11,233,971 |
| NET CASH INFLOW (OUTFLOW) | | (5,822,674) | (2,194,252) | 532,050 | 554,958 | 589,032 | 624,319 | 10,791,360 | 5,064,795 |
| Beginning cash / interest / operating reserve | | - | 20,493 | 226,241 | 56,191 | 113,367 | 148,587 | 162,692 | |
| Plus: | | | | | | | | | |
| Equity contributions | | 743,167 | - | - | - | - | - | - | 743,167 |
| Borrowings / principal advances | 7,500,000 | 5,100,000 | 2,400,000 | - | - | - | - | - | 7,500,000 |
| NET CASH INFLOW (OUTFLOW) | | (5,822,674) | (2,194,252) | 532,050 | 554,958 | 589,032 | 624,319 | 10,791,360 | 5,064,795 |
| Less: | | | | | | | | | |
| Distributions | | - | - | 630,000 | 400,000 | 450,000 | 500,000 | 3,857,961 | 5,807,961 |
| Debt reduction or assumption | | - | - | 92,301 | 97,781 | 101,812 | 110,215 | 7,006,091 | 7,500,000 |
| Ending cash / interest / operating reserve | | 20,493 | 226,241 | 56,191 | 113,367 | 148,587 | 162,692 | 0 | |
| Debt Service Coverage Ratio | | | | | 1.83 | 1.88 | 1.94 | 2.00 | |
| METRICS | | | | | | | | | |
| Series II Bondholders | | | | | | | | | |
| Contributions | | 3,000,000 | | | | | | | 3,000,000 |
| Distributions | | - | - | - | 400,000 | 450,000 | 500,000 | 3,857,961 | 5,207,961 |
| Cash-on-cash yield | | | | 0.00% | 13.33% | 15.00% | 16.67% | | |
| Internal rate of return / pre-tax yield | | | | | | | | 8.44% | |

*The financial projection above is based on a variety of estimates and assumptions that, though considered reasonable, are inherently subject to significant business, economic, regulatory and competitive uncertainties, many of which are beyond control and subject to change.*

Coastal Capital Advisors, Inc.
mark@ccisadv.com
912.352.5817